PEDRO BRANIZAR, demandante y apelado, *v.* TOMÁS MÉNDEZ, demandado y apelante.

Núm. 9689.—*Sometido:* Abril 2, 1948. *Resuelto:* Mayo 25, 1948.

*F. M. Susoni, Jr.,* y *Pablo Defendini,* abogados del apelante; *A. Reyes Delgado,* abogado del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El demandante radicó una demanda alegando, en síntesis, ser dueño de una finca urbana de la cual tenía arrendada al demandado la segunda planta, a base de un canon mensual de $25 posteriormente rebajado a $20; que el demandado convino ocupar la casa arrendada como diligente padre de familia y en vez de así hacerlo ha venido causando deterioro en la misma debido a actos maliciosos que se especifican en la demanda y ha usado de medios insultantes para impedirle ejercer su dominio; que necesita hacer reparaciones imprescindibles en el inmueble, tales como techarlo de nuevo, echándole una torta de concreto, las cuales no pueden hacerse mientras el inquilino esté ocupándolo, y solicitó de la corte que declarara rescindido el contrato y ordenase la entrega del inmueble. Contestó el demandado alegando, entre otras cosas, que la corte carecía de jurisdicción debido a la cuantía, y por este motivo se desestimó la demanda. Posteriormente, el demandante solicitó permiso para radicar una demanda enmendada y se radicó con el consentimiento del demandado. En dicha demanda enmendada se establecen virtualmente las mismas alegaciones que en la demanda original, pero se incluye además una segunda causa de acción a virtud de la cual se reclaman daños y perjuicios en la suma de $1,000 como consecuencia

de los actos del demandado en su carácter de arrendatario. En su contestación a ésta, el demandado impugnó otra vez la jurisdicción de la corte y alegó, además, que la demanda enmendada no aducía hechos constitutivos de una causa de acción y negó generalmente todos los hechos alegados. Celebrada la vista, la corte a quo dictó sentencia declarando que el demandante tenía derecho a dar por terminado el contrato de arrendamiento y el demandado la obligación de entregar la posesión de la casa objeto del arrendamiento y fijando un término de veinte días después de los treinta días en que fuere firme la sentencia para la entrega de la casa. Contra dicha sentencia se estableció este recurso. Alega el demandado, en primer término, que la corte inferior cometió error al declarar sin lugar las excepciones previas de falta de jurisdicción y la de no existencia de causa de acción y además al sostener que procedía la acción ordinaria de rescisión o terminación del contrato, con la consiguiente entrega de la posesión, independientemente de la acción de desahucio. Estas tres cuestiones, por estar relacionadas íntimamente, el apelante las discute conjuntamente y en igual forma lo haremos en esta opinión.

▮▮ Sostiene el apelante que el hecho de haberse allanado a que el demandante radicara la demanda enmendada, después de haberse desestimado la demanda original, no constituía un impedimento para que él impugnara la jurisdicción de la corte o la suficiencia de la demanda.

El artículo 1446 del Código Civil de Puerto Rico, Ed. 1930, dispone que "Si el arrendador o el arrendatario no cumplieren las obligaciones expresadas en los artículos anteriores, *podrán pedir la rescisión del contrato y la indemnización de daños y perjuicios,* o sólo esto último, dejando el contrato subsistente." (Bastardillas nuestras.) De modo que, a tenor con esta disposición, se puede solicitar la rescisión del contrato de arrendamiento y además la indemnización correspondiente por su incumplimiento. En este

812

caso, en la demanda original solamente se solicitó la rescisión del contrato de arrendamiento y se desestimó la demanda porque la cuantía no era suficiente para darle jurisdicción a la corte. Sin embargo, posteriormente, se radicó una demanda enmendada a la cual se allanó el apelante, en donde ejerciendo el derecho concedido por el artículo 1446, supra, el demandante solicitó daños y perjuicios en la cantidad de $1,000. Esto era suficiente para que la corte adquiriera jurisdicción. Nada hay en el récord que demuestre que esta última solicitud se hizo fraudulentamente con el único propósito de darle jurisdicción a la corte. *Benítez* v. *Benítez,* 64 D.P.R. 756; *Horace Waters & Co.* v. *Portilla,* 42 D.P.R. 950.

██ En cuanto a la otra parte de este señalamiento, arguye el apelante que las alegaciones de una acción de desahucio no pueden justificar una acción ordinaria de rescisión o terminación de contrato y que para poder efectuarse el desalojo de la casa objeto de este pleito era necesario alegar y probar que se habían cumplido los requisitos de la Ley Federal de Inquilinato entonces vigente a este respecto.

La demanda aquí radicada se hizo con una dualidad de propósito, a saber: (1) la rescisión del contrato de **arrendamiento,** y (2) como consecuencia de ello, el desalojo del demandado de la vivienda propiedad del demandante. No hay duda de que a tenor con las disposiciones del Código Civil, artículos 1445 y 1446, supra, se puede instar una acción como la que aquí nos ocupa y rescindir por justa causa el contrato de arrendamiento. Empero, para poder solicitar y obtener el desalojo de un inquilino, como secuela de la demanda de rescisión, es necesario cumplir con las leyes de inquilinato vigentes. *Figueroa* v. *Rodríguez,* ante, pág. 266, sobre reclamación de accesión.

██ La cuestión a resolverse, por lo tanto, se reduce a determinar si se cumplió con las leyes de inquilinato al ordenar la corte inferior el desalojo del demandado.

La demanda en este caso se radicó el 11 de diciembre de 1946. Para esta fecha la Ley Federal de Inquilinato(¹) entonces vigente, prohibía específicamente leyes locales sobre control de alquileres. *Latoni* v. *Corte*, 67 D.P.R. 140. Dicha ley además autorizó al Administrador a fijar cánones máximos para viviendas y a restringir o prohibir prácticas de desahucio. A tenor con la autoridad conferídale, el Administrador promulgó un reglamento en el cual, para poder un arrendador solicitar y obtener el desalojo de su inquilino, tenía que obtener, entre otras cosas, un certificado y además hacer ciertas notificaciones a la oficina federal local y al arrendatario. Por consiguiente, si este caso se hubiese resuelto durante ese período, no hay duda de que no procedía el desalojo del demandado porque no se cumplió con la ley y reglamento arriba mencionados.

Sin embargo, la sentencia en este caso fué dictada el 20 de agosto de 1947. Para esta fecha la Ley de Emergencia sobre Control de Precios fué sucedida en lo que concierne a control de alquileres por la Ley de Inquilinato de 1947 que empezó a regir el 1ro. de julio de dicho año. Public Law 129, Congreso 80, 1ra. Sesión. Dicha ley privó al Administrador de toda facultad para promulgar reglamentos en relación con desahucios y además suprimió la prohibición expresa que contenía la ley anterior sobre leyes locales con respecto a alquileres. A este efecto en el caso de *Ávila* v. *Tribunal de Distrito*, ante, pág. 11, dijimos:

". . . Por consiguiente, dada la ausencia de una prohibición expresa en la Ley de Inquilinato contra una ley local sobre control de alquileres, la Asamblea Legislativa insular después del 1 de julio de 1947 podía aprobar un estatuto de control de alquileres para complementar la Ley Federal, siempre que nuestra ley no esté sustancialmente en conflicto con la Ley Federal."

Como se ve, para el 20 de agosto de 1947, fecha en que se dictó sentencia en este caso, el demandante para obtener

---

(¹)Ley de Emergencia sobre Control de Precios de 1942, que estuvo en vigor hasta el 30 de junio de 1947, 50 U.S.C.A. App., sección 902.

el desalojo del demandado no tenía que cumplir con el reglamento promulgado por el Administrador y sí solamente con la Ley Federal, supra, y con la Ley insular núm. 464, Leyes de P. R., 1946, conocida como la Ley de Alquileres Razonables, en cuanto a esta última en todo aquello que no estuviere en conflicto con la federal. Aplicamos las leyes de inquilinato vigentes en la fecha en que se dictó sentencia por entender que así lo hizo, correctamente, la corte inferior aunque no hace mención de ello expresamente y porque el demandante siempre ha tenido una causa de acción contra el demandado, pero no podía ejercitarla antes de julio 1 de 1947 porque no había cumplido con las leyes y reglamentos vigentes. Pero a partir de esa fecha podía ejercitarla a tenor con la Ley Federal que empezó a regir en dicho día. En el caso de *Cintrón* v. *Corte Municipal*, 67 D.P.R. 793, 796 resolvimos:

"Encontramos la contestación a estos argumentos en el caso de *Fleming* v. *Rhodes*, 331 U.S. 100, 91 L. ed. 998. Toda vez que la Ley de Emergencia sobre Control de Precios de 1942, según enmendada, no estuvo en vigor entre julio 1ro. y julio 25 de 1946, algunos propietarios obtuvieron sentencias estatales para desahuciar inquilinos durante este corto período, sin los certificados exigidos por los reglamentos Federales. Sin embargo, antes de que algunos de estos inquilinos fueran de hecho lanzados, en 25 de julio de 1946 el Congreso aprobó la Ley de Extensión sobre Control de Precios que disponía en su sección 18 que empezaría a regir desde el 30 de junio de 1946 y que todos los reglamentos expedidos bajo la Ley de Emergencia de Control de Precios de 1942, según enmendada, estarían en vigor en la misma forma como si la Ley de 1946 hubiera sido aprobada el 30 de junio de 1946. Véase *Pueblo* v. *Camacho García et al.*, ante, pág. 788.

"Entonces el Administrador Federal solicitó *injunctions* ante las cortes de distrito Federales para impedir los lanzamientos basados en estas sentencias estatales. La disposición de la sección 18 al efecto de que la Ley Federal sería efectiva a partir del 30 de junio de 1946, fué impugnada por los propietarios—demandados en estos casos, por ser inconstitucional de aplicarse la misma a sus sentencias estatales (1) porque se ponían estas sentencias estatales retroacti-

vamente bajo la Ley de Extensión y (2) porque los derechos adquiridos creados por las sentencias no podían ser destruídos por legislación posterior.

·· En el caso de *Fleming* la Corte Suprema sostuvo el derecho del Administrador a obtener tales *injunctions* contra estos propietarios. La corte respondió a. estos dos argumentos constitucionales indicando en cuanto al primero que la restricción sobre desahucios era para el futuro, más bien que retroactiva. En cuanto al segundo punto relacionado con los supuestos derechos adquiridos de los propietarios en sus sentencias, la Corte dijo en 91 L. Ed. 1002:

·· ' 'Es inmaterial el hecho de que las sentencias estatales fueron obtenidas antes o después de la fecha en que entró en vigor la Ley de Extensión. El esfuerzo del apelante es impedir futuros procedimientos de lanzamiento, después de que los propietarios apelados hayan adquirido, mediante sentencias válidas, lo que la corte de distrito caracterizó como "derechos adquiridos". La reglamentación Federal de acción futura basada en derechos adquiridos anteriormente por la persona reglamentada no está prohibida por la Constitución. Toda vez que la Constitución autoriza la legislación posteriormente aprobada, el hecho de que sus disposiciones limiten o interfieran con derechos adquiridos anteriormente, no la proscribe. La inmunidad contra reglamentación Federal no se obtiene mediante contratos celebrados en previsión de la misma. Si fuera de otro modo, los poderes supremos del Congreso podrían ser anulados por el "discernimiento profético". Los derechos adquiridos en las sentencias no tienen una base diferente. La protección de facilidades de vivienda en las áreas de defensa mediante las leyes de control de precios, pueden llevarse a cabo por el apelante no obstante estas sentencias anteriores. . . . '

"Lo mismo que la Ley Federal de 1946, la Ley núm. 464 tiene un carácter prospectivo y no retroactivo, y fué correctamente aplicada en este caso para prohibir futuras órdenes de lanzamiento, y no a las sentencias ya dictadas. Y, según lo hace constar claramente el caso de *Fleming*, una sentencia—ya sea resultado de un pleito o de un 'contrato'—no puede operar en el sentido de impedir legislación que regule actuaciones futuras, v.g., lanzamientos que todavía no se han ejecutado."

Se ha resuelto, además, en otras jurisdicciones, que aun cuando el arrendador obtenga en un procedimiento sumario de desalojo una orden final para reponerlo en la posesión de

la propiedad si para la fecha en que comenzó a regir el reglamento promulgado por la Oficina de Administración de Precios no había obtenido la orden de desalojo, el inquilino podía permanecer en la posesión del local, acogiéndose a dicho reglamento, porque la ley federal sobre control de alquileres estaba en vigor antes de que terminara la relación de arrendador y arrendatario y por consecuencia el control local en relación con desahucios quedaba en suspenso. *Schwartz* v. *Trajer Realty Corporation*, 56 F. Supp. 930; *Weiss* v. *Metropolitan Life Ins. Co.*, 50 N.Y.S.2d 911; *Kimmelman* v. *Tenenbaum*, 50 N.Y.S.2d 912. *A contrario sensu*, si mientras la acción del arrendador está pendiente, la ley varía, y se eliminan las restricciones que no le permitían ejercitar su acción, entonces también éste puede acogerse a lo dispuesto por la nueva ley y solicitar y obtener, si existe causa, el desalojo de su inquilino.

La Ley de Inquilinato estableció las restricciones sobre desahucios y las causales correspondientes y dispuso en su sección 209(*a*) (4) que procede el desahucio.

"Cuando el propietario de buena fe interese recobrar la posesión de tales facilidades de vivienda para el fin inmediato de hacer reparaciones sustanciales, reconstruirlas o demolerlas y reemplazarlas con una nueva construcción, y la reparación o reconstrucción es razonablemente necesaria para la protección y conservación de dichas facilidades de viviendas, no pudiéndose efectuar las mismas mientras el inquilino permanezca en ellas, y cuando el propietario ha obtenido la aprobación que exija el estatuto federal, estatal o local para reparaciones, reconstrucciones o cualquier construcción que se desee."

El demandante alegó y ofreció prueba, creída por la corte inferior, al efecto de que es necesario reparar el inmueble, pues el mismo se encuentra en condiciones que no permiten que la vivienda sea habitada porque el techo que es de zinc está en muy malas condiciones y es imprescindible echar una torta de concreto; que las ventanas están en pésimo estado; y que no puede llevar a cabo las menciona-

das reparaciones mientras el demandado esté ocupando la casa. A este respecto la corte a quo se expresó así: "Pero apreciando toda la evidencia en conjunto y teniendo en cuenta que el demandado no declaró ni presentó prueba, se llega al convencimiento de que es cierto que el demandante está en la necesidad honrada de arreglar su casa . . . Las reparaciones son tales, que hacen imprescindible el que sea desocupada la casa para llevar a efecto la reparación."

Siendo esto así, el demandante, a tenor con lo dispuesto en la sección 209(a)(4) supra, tiene derecho a desalojar al demandado. Nada hay en la ley insular núm. 464 de 1946, supra, que afecte la conclusión a que hemos llegado en este caso.

██ La corte inferior fijó un término de veinte días para la entrega de la casa. Entendemos que esto es erróneo porque aunque ni la ley federal ni la insular sobre control de alquileres fijan el término dentro del cual se efectuará el lanzamiento en aquellos casos en que la causal lo es el que se interese recobrar la posesión de buena fe para hacer reparaciones tales que hacen imprescindible el que sea desocupada, sin embargo, el Código de Enjuiciamiento Civil de Puerto Rico, Ed. 1933, artículo 635, según enmendado por la Ley núm. 170 de 1942, Leyes de Puerto Rico, dispone que:

"La sentencia que declare con lugar la demanda de desahucio ordenará el lanzamiento del demandado dentro de los términos siguientes, contados desde que dicha sentencia quede firme:

"Cuarenta (40) días, si se tratase de una casa destinada a habitación o vivienda de familia. Veinte (20) días en todos los demás casos."

De acuerdo con esto, no podía concederse un término menor de cuarenta días. En este sentido la sentencia debe ser modificada.

Por último alega el demandado apelante que la sentencia es contraria a la prueba. Hemos hecho un detenido es-

tudio de la prueba aquí aportada y encontramos que la misma es suficiente para sostener la sentencia.

*La sentencia será modificada al efecto de conceder al demandado apelante un término de cuarenta días para desocupar la vivienda objeto de la demanda y así modificada será confirmada.*

El Juez Asociado Sr. De Jesús no intervino.