FIDIAS POLANCO, PATRIA SANTIAGO Y OTRA, peticionarias, v. TRIBUNAL SUPERIOR, SALA DE CAROLINA, HON. ROBERTO BIRD HOFFMAN, demandado.

Número: JO-86-10    Resuelto: 3 de marzo de 1987

*Iván Pagán Hernández,* abogado de las peticionarias; *José R. Goyco Amador* y *Rafael Fuster Martínez,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

El 19 de diciembre de 1985, Fidias Polanco y Patria Santiago demandaron en daños y perjuicios a Pueblo International Inc., ante el Tribunal Superior, Sala de Carolina (Civil Núm. 85-3386). Alegaron que "fueron intervenidas [*sic*] e irrazonablemente detenidas por un guardia de seguridad de la demandada"; que en presencia del público y sobre sus objeciones "fueron conducidas a una habitación, donde el guardia empujó a una de ellas para arrebatarle el bolso y luego procedió a registrar a una de las niñas, alegando que uno de los niños había tomado un globo (bombas) [; que e]stuvieron detenidas allí irrazonablemente hasta tanto en cuanto [*sic*] firmaran un documento de relevo o de admisión, no permitiéndole el guardia la salida hasta que no firmaran [; y q]ue debido a que la detención se hizo en público, las demandantes sufrieron grandes trastornos emocionales, al verse hostigadas, detenidas y amenazadas de ser acusadas, por lo que recibieron tratamiento médico por 15 días, para su neurosis aguda, hipertensión arterial y cefálea". Estimaron sus daños

físicos y morales en la "suma de $50,000.00 para cada una". (¹) *Exhibits* 1 (a) y 1 (b).

Previa prórroga al efecto, Pueblo contestó y negó los hechos y responsabilidad. Cursó además un interrogatorio a las demandantes. El 22 de enero presentó demanda de tercero contra Private Police of P.R. Inc., y su aseguradora. Posteriormente Pueblo desistió de esta acción, el tribunal dictó sentencia parcial y la archivó.

Así las cosas, continuaron varios trámites en el caso. Con relación a los interrogatorios, Pueblo objetó la suficiencia de la contestación a la pregunta Núm. 22. (²) También solicitó y obtuvo autorización para examinar, copiar y fotocopiar los records médicos correspondientes a los alegados tratamientos prestados por los doctores Ortiz y Jiménez.

El 1 de mayo, el tribunal *sua sponte*, previo examen de "todas las alegaciones de la demanda y de la contestación a la misma, aun considerado el caso a la luz de que pueda prevalecer la parte demandante, la cantidad que el Tribunal concedería no confiere competencia al Tribunal Superior", ordenó su traslado al Tribunal de Distrito. El 6 de mayo los autos fueron remitidos a este último foro y fue presentado con el Núm. 86-1182.

---

(¹)Los hechos que nutren la presente causa de acción y sus alegaciones, guardan bastante parecido con los hechos expuestos y daños reclamados en *Soc. Gananciales* v. *G. Padín Co., Inc.*, 117 D.P.R. 94 (1986). Allí ninguna de las partes, como tampoco el Tribunal Superior o este foro, se plantearon la suficiencia de la cuantía.

(²)Por su pertinencia al recurso, reproducimos esa pregunta y contestación:

"Si actualmente está usted bajo la atención de algún médico, haga constar (a) nombre completo y dirección exacta de dicho médico; (b) la fecha de la última vez que fue visto por dicho médico; (c) la naturaleza del último tratamiento recibido; y (d) el diagnóstico hecho por dicho facultativo."

"a) Primero me atendió Wallace Jiménez y luego el Dr. Claudio Ortiz, de Country Club; b) Dr. Claudio Ortiz; c) nervios; d) cefálea, hipertensión, nervios."

Acogimos como *certiorari* un auto inhibitorio solicitado por las demandantes y revisamos mediante trámite de mostrar causa.

## II

■ El mandato plasmado en la Sec. 2 del Art. V de la Constitución respecto a que los tribunales "constituirán un sistema judicial unificado en lo concerniente a jurisdicción, funcionamiento y administración" —con miras a lograr la mayor eficiencia, distribución equitativa de trabajo, rapidez, especialización de jueces, economía y máxima flexibilidad— fue concebido por la Asamblea Constituyente sin menoscabo de la facultad legislativa "para determinar la competencia de los tribunales y para disponer que de acudir un litigante a un tribunal distinto al indicado por las leyes sobre competencia, la parte contraria p[odría] solicitar y obtener el traslado de la causa, o el tribunal motu proprio ... así disponerlo". 4 Diario de Sesiones de la Convención Constituyente 2609 (1951).

■ Para viabilizar esa directriz constitucional, la Asamblea Legislativa —mediante la Sec. 10 de la Ley de la Judicatura de 1952— prohibió la desestimación de una acción por el fundamento de "haberse sometido a una sección sin jurisdicción o autoridad o a una sala de un tribunal sin competencia". 4 L.P.R.A. sec. 62. Además autorizó que un caso pudiera ser visto en un tribunal sin competencia con el consentimiento de las partes y la anuencia del juez. De lo contrario, sería trasladado a la sección o sala correspondiente. En lo que atañe a este recurso, la referida Ley de la Judicatura confirió competencia al Tribunal Superior para intervenir y resolver las causas civiles "en que la cuantía en controversia, reclamación legal o valor de la propiedad en disputa exceda de diez mil (10,000) dólares, sin incluir intereses, costas y honorarios de abogado". 4 L.P.R.A. sec. 121(a)(5).

■ Desde antes de la Constitución, nuestro repertorio jurisprudencial invariablemente había sostenido: (1) que el criterio rector para evaluar la competencia por cuantía surgía de la reclamada de la faz de la demanda, y (2) esa determinación no quedaba afectada porque la suma posteriormente concedida fuera menor. *Román* v. *Figueroa*, 73 D.P.R. 875, 879 (1952); *Cerra* v. *Motta*, 70 D.P.R. 861, 866 (1950); *Branizar* v. *Méndez*, 68 D.P.R. 809, 812 (1948); *Benítez* v. *Benítez*, 64 D.P.R. 756 (1945); *Jiménez* v. *Colón*, 62 D.P.R. 907, 909 (1944); *Donato* v. *Cruz*, 59 D.P.R. 534, 538 (1941); *Nazario* v. *Muñiz*, 54 D.P.R. 51, 54 (1939); *Horace Waters & Co.* v. *Portilla*, 42 D.P.R. 950, 953 (1931).

## III

La decisión del foro de instancia se aparta de esta doctrina jurisprudencial e innecesariamente introduce en los trámites de causas civiles en que se reclaman daños que no son líquidos, una solución que, aunque laudable, tiende a ocasionar mayores dilaciones de las que intenta remediar. No podemos avalarla.

La actuación del foro de instancia no está expresamente autorizada en las Reglas de Procedimiento Civil. Tampoco tiene apoyo en la casuística. No existen ni se proveen guías apropiadas para su ejercicio.[3] En estas circunstancias, independientemente de su loable objetivo, no debería prevalecer.[4] Su reconocimiento requeriría forzosamente ponderar,

---

[3] La Regla 71 de Procedimiento Civil, faculta a los tribunales, cuando no se hubiese previsto un procedimiento específico, "reglamentar su práctica en cualquier forma que no sea inconsistente con las mismas o con cualquier disposición de ley aplicable". 32 L.P.R.A. Ap. III, R. 71.

[4] En el ámbito federal, el asunto cobra verdadero relieve debido a que la cuantía en exceso de $10,000 es requisito jurisdiccional. Dado a sus complejidades, existen disparidades de criterios. "[G]eneralmente se ha asumido, tomando como base la regla enunciada por la Corte Suprema de Estados Unidos en *Saint Paul Mercury Indem. Co.* v. *Red Cab Co.* [303 U.S. 283, 288–289 (1938)], que las alegaciones de un reclamante sobre la existencia de la cuantía jurisdiccional será concluyente, salvo (1) que surja que no se ha hecho de buena fe o (2) la Corte crea, como materia de certeza legal [*legal*

analizar y superar varios aspectos de carácter sustantivo y procesales. Veamos.

El primero a tomar en cuenta es la naturaleza intrínsecamente compleja de la estimación de daños por angustias físicas y mentales. Ni los abogados ni jueces más experimentados poseen una regla matemática apriorística a usarse.

> . . . Bajo la fórmula amplia de responsabilidad consagrada en el Art. 1802 del Código Civil (31 L.P.R.A. sec. 5141), no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, *obtener el resultado final apropiado*. Esta función descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido de justicia y de conciencia humana. *El contacto con la prueba presentada en el proceso judicial de primera instancia y las impresiones derivadas de la apreciación visual del juez,* es la razón básica para que en ausencia de un dictamen imponiendo una cuantía ridículamente baja o exageradamente alta, a la luz de la prueba sobre daños presentada, en nuestra función apelativa, implementemos la norma de abstención judicial fundada en criterios de estabilidad y de respeto a los tribunales de pri-

---

*certainty*], que de hecho el valor del derecho en controversia es de diez mil dólares o menos." Nota, *Determination of Federal Jurisdictional Amount in Suits on Unliquidated Claims,* 64 Mich. L. Rev. 930, 931 (1966); Nota, *Nelson v. Keefer and its Implications in the Area of Jurisdictional Amount,* 26 Sw. L.J. 461 (1972). Los tratadistas reconocen que los requisitos de buena fe y certeza legal son de difícil aplicación.

Para desanimar las sobreevaluaciones de daños que no son líquidos, se han ensayado varios métodos. Las cortes pueden negarle al demandante victorioso las costas o imponérselas. *Wright, Law of Federal Courts* Sec. 33, pág. 185 (4ta ed. 1983). Otras exigen que mediante declaración jurada el reclamante reitere su creencia de que cumple la cuantía jurisdiccional. *Harris* v. *Pasquotank County, North Carolina,* 227 F. Supp. 625 (1964).

En daños indeterminados se acepta que la regla es de "intangibilidad que no se presta a cálculo preciso y conlleva sopesar factores íntimamente vinculados a los méritos de la causa". 14A *Wright, Miller & Cooper, Federal Practice and Procedure 2d* Sec. 3707, pág. 135 (1985). Véase Anotación, *Criteria of Jurisdictional Amount in Tort Action for Unliquidated Damages in Federal Court,* 47 A.L.R.2d 651–664 (1956).

mera instancia. (Énfasis suplido.) *Urrutia* v. *A.A.A.*, 103 D.P.R. 643, 647–648 (1975).

▮ Segundo, una orden de traslado por cuantía implica un prejuzgamiento sobre los méritos de uno de los elementos esenciales en que se descompone toda acción en daños y perjuicios. Su implantación representa serias dificultades. A lo sumo, podría decretarse en los inicios del proceso o en una etapa más adelantada. La inicial, idealmente tendría el mayor efecto disuasivo. Sin embargo, presenta el peligro de que el traslado se produzca sin el juzgador remitente poseer suficientes elementos de juicio. Así, la orden no descansaría en una conciencia judicial informada, sino la intuición. La avanzada, aunque penalizaría al demandante, afectaría también todas las demás partes envueltas. El traslado en esta etapa socavaría la efectividad de la Regla 37.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Le quitaría el control del caso al juez que dirigió la fase procesal en sus etapas iniciales, poniéndolo en manos de otro magistrado que tendría que comenzar por familiarizarse con el mismo. Cualquier otra interpretación sería contraria a la economía procesal. Regla 1 de las de Procedimiento Civil. Véanse: *Vellón* v. *Squibb Mfg., Inc.*, 117 D.P.R. 838 (1986); *Lluch* v. *España Service Sta.*, 117 D.P.R. 729 (1986), y Enmiendas propuestas a las Reglas de Procedimiento Civil, Conferencia Judicial, Decimotercera Sesión Plenaria, diciembre de 1986, págs. 79–94.

Tercero, en nuestra jurisdicción el estudio contenido en una tabla especial de un informe sometido a la Conferencia Judicial de 1985 por la Oficina de Administración de los Tribunales (O.A.T.), *Reorganización del Tribunal de Primera Instancia*, revela, que de una muestra de 105 casos, los tribunales adjudicaron cuantías de $10,000 o menos, en 65 (62%). Este patrón estadístico queda corroborado por las tablas de otros años que anejamos como apéndice. Las mismas señalan que el problema es repetitivo y de proporciones alarmantes.

Aun así, es apropiado destacar que el informe aludido, si bien concluye que la muestra permitiría "apuntar una tendencia generalizada a aumentar artificialmente la cuantía en controversia" (*Reorganización del Tribunal de Primera Instancia*, supra, pág. 65), luego de examinar algunas alternativas para desalentar esa práctica, tales como la imposición de un arancel escalonado a base de la suma reclamada, o eliminar la imposición de costas al reclamante victorioso reconoció:

> [q]ue la diferencia entre la cuantía en controversia y la adjudicada puede deberse a una serie de elementos *por los que no se puede culpar a los abogados. Por ejemplo, los daños morales son difíciles de valorar, al igual que la pérdida de capacidad mental o física a consecuencia de un accidente.* Por otro lado, ¿cuánto vale una muerte? Las diferencias en cuanto a compensaciones concedidas ha variado históricamente desde sumas relativamente pequeñas a cifras astronómicas. En ocasiones, por motivos distintos que pueden ir desde debilidad de la prueba al mollero judicial, se realizan transacciones por sumas muy inferiores a la cuantía reclamada. *Con todo esto queremos decir que el problema es mucho más complejo que meramente comparar la cuantía reclamada y la adjudicada.* (Énfasis suplido.) *Reorganización del Tribunal de Primera Instancia*, supra, pág. 70.

■ Es cuestionable, pues, presumir que en la mayoría de los casos de daños las cuantías reclamadas son rutinaria e intencionalmente sobrestimadas por los abogados.([5]) Hemos visto cómo intervienen una multiplicidad de factores legítimos que impiden sostener tajantemente esa conclusión. Las alegaciones sólo tienen la misión de notificar a grandes rasgos las

---

([5]) Pecaríamos de ingenuos si no aceptáramos que cierto número restringido de abogados, con el propósito, entre otros, de mejorar el poder de regateo ante una posible transacción, sobreevalúan las cuantías reclamadas. Sin embargo, suscribimos la conclusión del informe de la O.A.T. de que no puede culpar a todos los abogados por las diferencias estadísticas entre las cuantías reclamadas y las adjudicadas. *Reorganización del Tribunal de Primera Instancia*, informe sometido por la Oficina de Administración de los Tribunales a la Conferencia Judicial de 1985.

reclamaciones y defensas de las partes. *Sierra* v. *Tribunal Superior*, 81 D.P.R. 554 (1959). Esta realidad procesal complementa y explica, en parte, el delicado problema que presenta la evaluación preliminar forense de los pleitos de daños por negligencia.

■ En resumen, el traslado de una causa por entender el Tribunal Superior que la cuantía a ser adjudicada no excederá los $10,000, en una etapa inicial, presenta serias dificultades. En la fase procesal más adelantada puede perjudicar a la parte demandada y al eficaz desenvolvimiento del sistema de administración de justicia. Tal proceder no está expresamente autorizado. Aceptar que con posterioridad al descubrimiento de prueba el Tribunal Superior puede decretarlo —porque a su juicio la cuantía a concederse será menos de $10,000— es una solución que no sólo implica prejuzgar un aspecto importante de la causa de acción, sino que a la postre derrota el objetivo fundamental de las reglas de garantizar una solución justa, rápida y económica de las controversias.

■ Sin embargo, el Tribunal Superior no está huérfano de remedios disuasivos. Actualmente las reglas proveen mecanismos para conjurar y atender situaciones de este tipo que así lo ameriten. Todo abogado que suscribe y presenta una demanda ante ese foro —y alega que la reclamación en daños excede los $10,000— compromete con la firma su buena fe forense. Regla 9 de Procedimiento Civil. En caso de violación clara y voluntaria del abogado, la propia regla autoriza "la imposición de sanciones en su contra". Y recientemente, con vigencia inmediata, la Ley Núm. 2 de 30 de diciembre de 1986, enmendó la Regla 44.1(d) para expresamente disponer que en "caso que cualquier parte *o su abogado* haya procedido con temeridad *o frivolidad,* el tribunal deberá imponerle en su sentencia *al responsable,* el pago de una suma por concepto de honorarios de abogado *que el tribunal entienda correspondan a tal conducta".* Además, por interacción armoniosa, otras

sanciones —de carácter económico— interlocutoriamente pueden ser concedidas a base de cualesquiera de las siguientes alternativas: (1) de prevalecer el demandante, negándole las costas; (2) concederlas a la parte contraria, o (3) imponerlas a favor del Estado. Regla 44.2. Seguimos esta ruta procesal. Corresponderá a los tribunales de instancia primeramente darle vida y alcanzar este derrotero. Véanse: Nota, *Plausible Pleading: Developing Standards for Rule 11 Sanctions*, 100 Harv. L. Rev. 630 (1987); E. Root, *The Dynamics of Rule 11: Preventing Frivolous Litigation by Demanding Professional Responsibility*, 61 N.Y.U.L. Rev. 300 (1986).

Por los fundamentos expuestos, *se dictará sentencia, revocará el traslado decretado por el Tribunal Superior y ordenará la devolución del caso a ese foro.*

El Juez Asociado Señor Rebollo López emitió opinión concurrente y la Juez Asociada Señora Naveira de Rodón emitió voto particular. El Juez Presidente Señor Pons Núñez concurre en el resultado sin opinión escrita.

# APÉNDICE

## TRIBUNAL SUPERIOR

### RESUMEN DE LAS CUANTÍAS EN CONTROVERSIA Y ADJUDICADAS
### CASOS DE DAÑOS Y PERJUICIOS

AÑOS FISCALES 1981–82 AL 1985–86

| Cuantía en controversia 10,001 a 75,001 o más año fiscal | Cuantía Adjudicada | | | | |
|---|---|---|---|---|---|
| | Menos de 2,500—a—10,000 | % del Total | 10,001—a—75,000 o más | % del Total | Total |
| 1981–82 | 64 | 67.0 | 32 | 33.0 | 96 |
| 1982–83 | 82 | 72.0 | 32 | 28.0 | 114 |
| 1983–84 | 65 | 62.0 | 40 | 38.0 | 105 |
| 1984–85 | 48 | 61.0 | 31 | 39.0 | 79 |
| 1985–86 | 52 | 60.0 | 35 | 40.0 | 87 |
| Total | 311 | 65.0 | 170 | 35.0 | 481 |

Fuente de Información: Data suministrada por la Oficina de Adm. de los Tribunales.

—0—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

No obstante estar de acuerdo, dado los hechos particulares del mismo, con el resultado a que se llega en el presente caso, no podemos suscribir la opinión mayoritaria del Tribunal. El automatismo y absolutismo no deben tener cabida en nuestro ordenamiento jurídico. El propósito cardinal que anima todos los esfuerzos envueltos en esta delicada misión —la de hacer la mejor justicia posible, de la manera más rápida y en la forma más económica de que seamos capaces— así no lo permite.

Contrario a otros, somos del criterio que la continua imposición de medidas disciplinarias a los miembros de la clase togada no es la mejor ni la única solución a los problemas que aquejan la práctica de la profesión de la abogacía en Puerto Rico. Ya es hora de que se intente solucionar los mismos utilizando otros enfoques. Podríamos empezar, cuando menos, confiando en el criterio y buen juicio de nuestros jueces de instancia permitiendo que éstos —a base de su experiencia— hagan la valiosa aportación de que definitivamente son capaces.

Procede que nos cuestionemos, ¿por qué negarle, *de manera absoluta*, a un juez del Tribunal Superior el poder para ordenar el traslado de un caso al Tribunal de Distrito cuando éste, luego de un análisis objetivo y juicioso de la situación, queda plenamente convencido de que el caso no es de su competencia?

I

La parte peticionaria radicó una demanda de daños y perjuicios ante el Tribunal Superior de Puerto Rico, Sala de Carolina, en la cual alegó —en síntesis y en lo pertinente— que los demandantes habían sido víctimas de un arresto y registro

ilegal e irrazonable por parte de un guardia de seguridad empleado de la parte demandada mientras compraban en uno de los establecimientos comerciales de esta última; en el párrafo cuarto de la demanda alegaron que "debido a que la detención se hizo en público, los demandantes [madre e hija] sufrieron grandes trastornos emocionales, al verse hostigadas, detenidas y amenazadas de ser acusadas, por lo que recibieron tratamiento médico por 15 días, para su neurosis aguda, hipertensión arterial y cefálea". *Exhibit* 1 (a). Se solicitó, por último que se condenara a la parte demandada a pagarle a cada una de las dos demandantes la suma de $50,000 por concepto de "los daños físicos y morales" sufridos por éstas. *Exhibit* 1 (b).

Contestada la demanda y trabada la controversia, con fecha de 1ro de mayo de 1986 el tribunal de instancia emitió la siguiente orden:

> Habiéndose *examinado todas las alegaciones de la demanda y de la contestación a la misma,* aún considerando el caso a la luz de que pueda prevalecer la parte demandante, la cantidad que el Tribunal concedería no confiere competencia al Tribunal Superior.
>
> Trasládese el caso al Tribunal de Distrito. (Énfasis suplido.) *Exhibit* 2 (c).

Inconforme, la parte demandante acudió ante este Tribunal mediante la radicación de un "auto inhibitorio". Habiendo considerado el recurso radicado como uno de *certiorari*, mediante resolución de 26 de junio de 1986 le concedimos término a la parte recurrida para mostrar causa "por la cual este Tribunal no deba expedir el auto y dictar sentencia revocatoria de la Orden emitida por el Tribunal Superior de Puerto Rico, Sala de Carolina, de fecha 1r[o] de mayo de 1986". Dicha parte ha comparecido.

## II

Como es sabido, la Ley de la Judicatura, en su Art. 1, establece en lo pertinente al asunto en controversia que el Tri-

bunal Superior conocerá de "todo asunto civil en que la cuantía en controversia, reclamación legal o valor de la propiedad en disputa, exceda de diez mil (10,000) dólares, sin incluir intereses, costas y honorarios de abogado". 4 L.P.R.A. sec. 121 (a) (5).

Como bien señala la parte recurrida en su comparecencia, el efecto real y práctico de la mencionada disposición legal ha sido que, como regla general, quien decide "la competencia por cuantía" de los casos de daños y perjuicios ante el tribunal de primera instancia lo es el demandante por razón de que es quien "valora" originalmente los daños que reclama. En otras palabras, el abogado de la parte demandante es el "primer enjuiciador o juez" del pleito que se propone radicar. Dicho profesional no sólo tiene la responsabilidad de decidir si su cliente tiene o no una buena causa de acción que deba tener acceso al tribunal, sino que viene obligado a estimar el valor de la misma en dinero.

Es por ello que los miembros de la clase togada desempeñan un papel importantísimo en esta problemática. Debe recordarse que el abogado, como funcionario del tribunal que es, tiene un deber de honestidad para con el mismo. No obstante, no hay duda de que la experiencia demuestra que la mayor parte de los casos de daños y perjuicios que se radican ante el Tribunal Superior adolecen de la condición de que las cuantías reclamadas en los mismos han sido sobreestimadas. De hecho, como correctamente señala la opinión mayoritaria, un estudio realizado por la Oficina de Administración de los Tribunales —considerado por la Conferencia Judicial de Puerto Rico de 1985— revela que de una muestra de 105 casos de daños y perjuicios radicados en el Tribunal Superior, en el 62% de los mismos la indemnización adjudicada fue de $10,000 o menos. [1]

---

[1] *Reorganización del Tribunal de Primera Instancia,* informe sometido por la Oficina de Administración de los Tribunales ante la Conferencia Judicial de Puerto Rico celebrada en noviembre de 1985, pág. 65.

La situación merece seria consideración por cuanto podría significar que a nivel del tribunal de primera instancia los recursos —tanto humanos como materiales— podrían estar siendo "mal utilizados".

No es correcto, como expone la opinión mayoritaria, que la "actuación del foro de instancia no está expresamente autorizada en las Reglas de Procedimiento Civil". No existe en nuestro ordenamiento jurídico disposición alguna que impida que un juez del Tribunal Superior pueda —a *fundamentada* solicitud de parte antes de que se resuelva en definitiva un caso de daños y perjuicios— ordenar el traslado de un caso de esta naturaleza al Tribunal de Distrito *cuando queda convencido* de que el mismo no es de su competencia y que el caso debió de ser radicado originalmente en este último tribunal.

*Lo cierto es que esta determinación está autorizada y encuentra apoyo en las disposiciones de la Regla 3.1 de las de Procedimiento Civil de 1979.* Como es sabido, la citada regla establece:

3.1. *Competencia*

*Todo pleito se presentará en la sección o sala que corresponda según lo dispuesto por ley y por estas reglas,* pero no se desestimará ningún caso por razón de haberse sometido a una sección o sala sin competencia o autoridad para ello. Todo pleito podrá tramitarse en la sección o sala en que se presente *por convenio de las partes y la anuencia del juez* que presida dicha sala en ese momento. *De lo contrario, será transferido por orden del juez a la sección o sala correspondiente.* (Énfasis suplido.)

Merece que se enfatice que el requisito de que el juez dé su anuencia en esta clase de situaciones "constituye un nuevo elemento añadido por la Ley de la Judicatura". *Aetna Ins. Co.* v. *Tribunal Superior,* 103 D.P.R. 480, 483 (1975).

Somos del criterio que la solución de este serio problema que afecta a las salas del Tribunal Superior, causando una indebida congestión de los calendarios, no puede ni debe ser

resuelto meramente a base de la amenaza de imposición de sanciones económicas a los miembros de la clase togada. Ya es tiempo de que se reconozca que este enfoque no es la panacea de los problemas que aquejan a nuestra profesión.

Existen otras alternativas que pueden ser implementadas a todos los niveles. Debemos confiar en el buen-juicio de nuestros jueces de instancia. En lugar de maniatarlos, debemos proveerles mecanismos para que éstos, con entusiasmo, creatividad e imaginación, puedan solucionar los problemas con que se confrontan.

Repetimos, no existe en nuestro ordenamiento disposición alguna que prohíba lo realizado por el juez recurrido en el presente caso. *Naturalmente, que la decisión que a esos efectos se emita deberá ser una informada.* Los "resultados" que arrojan los mecanismos de descubrimiento de prueba que proveen las Reglas de Procedimiento Civil de 1979 pueden y deben ser de extraordinaria ayuda en esta situación por cuanto de los mismos, de ordinario, se desprende la información necesaria para poder realizar una evaluación razonable de los daños que se ajuste a la realidad de lo ocurrido.

Resolver lo contrario, esto es, que el Tribunal Superior no posee esta facultad tiene el efecto de hacer inoperante el Art. 1 antes citado de la Ley de la Judicatura por cuanto deja totalmente al arbitrio de los demandantes la determinación de cuál de los dos tribunales es el que tiene competencia para entender en un caso en particular. Es por todos conocido que anualmente se radican cientos de casos ante el Tribunal Superior, en relación con los cuales no se necesita ser muy perspicaz para poderse uno inmediatamente percatar de que los mismos son de la competencia del Tribunal de Distrito. ¿Por qué obligar a los jueces del Tribunal Superior a retener dichos casos en sus salas?

La "solución" que nos brinda la opinión mayoritaria al problema ante nuestra consideración no resuelve el mismo; esto es, no importa la clase o cuantía de las sanciones econó-

micas que al finalizar el caso se le impongan a los abogados "infractores", los casos que ellos radicaron tienen el efecto de congestionar los calendarios de las salas del Tribunal Superior, imposibilitando que sus jueces resuelvan asuntos de mayor importancia que verdaderamente son de su competencia. Esto es, la opinión mayoritaria tiene el resultado de perpetuar la errónea distribución de trabajo existente entre las dos antes mencionadas secciones del tribunal de primera instancia. Cruzarse de brazos ante dicha situación no está a la altura del objetivo que inspira y justifica nuestra misión como jueces, esto es, garantizarle a nuestro país la mejor justicia en la forma más rápida y económica posible.

Somos del criterio, en síntesis, que terminada la etapa de descubrimiento de prueba un juez del Tribunal Superior —ante una *fundamentada solicitud* de una de las partes presentada en término razonable— debe tener la facultad de ordenar el traslado de un caso de daños y perjuicios al Tribunal de Distrito en aquellas situaciones en que su *informado y juicioso criterio* sea a los efectos que, de prevalecer la parte demandante, la cuantía a concederse *obviamente* será menor de $10,000. [2]

### III

No obstante lo anteriormente expresado, estamos de acuerdo con que procede la revocación de la orden de traslado emitida en el presente caso. Como surge de la referida orden, la decisión a que llegó el magistrado de instancia está basada exclusivamente en un examen de "las alegaciones de la demanda y de la contestación a la misma". *Exhibit* 2 (c). Es

---

[2] Esta facultad se asemeja a la concedida en forma general a los jueces bajo las disposiciones de la Regla 3.5 de las de Procedimiento Civil. Como es sabido, a la luz de dicha disposición, los jueces tienen la facultad de ordenar el traslado de un caso de sala o sección, a petición de parte, por razón de la localización de la propiedad inmueble en controversia, Regla 3.2; según el sitio de origen de la causa del litigio, Regla 3.3, y de acuerdo a la residencia de las partes, Regla 3.4. (32 L.P.R.A. Ap. III.)

obvio que el tribunal de instancia en ese momento no tenía los elementos necesarios para valorizar adecuadamente el caso. Su acción, en esa etapa, constituyó un "abuso de discreción".

—o—

Voto particular de la Juez Asociada Señora Naveira de Rodón.

Estamos conformes con la opinión del Tribunal, sin embargo, quisiéramos hacer algunas expresiones adicionales. Aunque las Reglas de Procedimiento Civil de 1979 no disponen un término en particular para que el Tribunal *sua sponte* traslade una acción civil de una sección del tribunal de instancia a otra, dicho cuerpo de reglas —en particular las Reglas 1, 3.5, 9 y 37.1— y su jurisprudencia interpretativa —*Camaleglo* v. *Dorado Wings, Inc.*, 118 D.P.R. 20 (1986); *Vellón* v. *Squibb Mfg., Inc.*, 117 D.P.R. 838 (1986); *Lluch* v. *España Service Sta.*, 117 D.P.R. 729 (1986); *García Negrón* v. *Tribunal Superior*, 104 D.P.R. 727, 729 (1976); también véase P. Ortiz Álvarez, *Un enfoque axiológico pragmático e integral para la aplicación de las Reglas de Procedimiento Civil*, 2 Forum 12, 15 (oct.–dic. 1986)— ([1]) nos llevan a concluir que la referida determinación de trasladar el caso debe realizarse en las primeras etapas del procedimiento.

En armonía con la finalidad que persiguen las Reglas de Procedimiento Civil de lograr "una solución justa, rápida y económica de todo procedimiento", Regla 1, ([2]) en 1979 éstas se enmendaron para limitar á treinta (30) días el término que tiene la parte demandada para solicitar el traslado. Regla

---

([1]) Sobre la Regla 9 véase lo citado en la opinión del Tribunal; también véase *Enmiendas propuestas a las Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial del Tribunal Supremo, diciembre de 1986, págs. 30–45.

([2]) 32 L.P.R.A. Ap. III.

3.5. (³) Siguiendo esta misma filosofía hemos interpretado que mediante la utilización de la Regla 37.1 sobre conferencia con antelación al juicio, el juez debe ejercer el control de los procedimientos en el caso desde sus inicios. *Vellón* v. *Squibb Mfg., Inc.*, supra; *Lluch* v. *España Service Sta.*, supra. La efectividad de este mecanismo procesal y la finalidad que persiguen las reglas requieren que cualquier traslado se haga en etapas tempranas de los procedimientos.

Por todo lo anterior, estamos conforme con la opinión del Tribunal.

---

(³) Esta regla dispone en lo pertinente:

"(a) Presentado un pleito en una sección o sala que no sea la apropiada, si la parte demandada desea impugnar la falta de competencia de dicha sección o sala, deberá presentar, dentro de un término no mayor de treinta (30) días a partir de la fecha de la notificación de la demanda y el emplazamiento, una moción para que el pleito sea trasladado a la sección o sala correspondiente. La moción de traslado deberá ser debidamente jurada a menos que de la faz de la demanda, o de los autos del caso, surjan los hechos en que se funda la referida moción. De no presentarse escrito alguno en oposición a la moción de traslado dentro de los diez (10) días de haberse notificado la referida moción, el caso será trasladado a la sección o sala correspondiente."