HON. CARLOS J. CALCADOR BERRÍOS, demandante y peticionario, *v.* ROSA MARÍA RAMÍREZ PANTOJAS, ALBA IRIS RIVERA RAMÍREZ y COMISIÓN ESTATAL DE ELECCIONES, demandadas y recurridas.

*Número:* CE-88-305     *Resuelto:* 7 de junio de 1988

*Juan Santiago Nieves* y *José Juan Nazario De la Rosa*, de *Nazario, Santiago y De León*, abogados del peticionario; *Ada Rosa Juarbe* y *Agustín Mangual Hernández*, abogados de las recurridas.

## RESOLUCIÓN

A la petición de *certiorari*, no ha lugar. El peticionario no ha demostrado que la papeleta a utilizarse en las primarias de 12 de junio de 1988 por la candidata Rosa María Ramírez

Pantojas, y la incorporación de una equis (X) como parte de la misma, viole alguna disposición de la Ley Electoral de Puerto Rico; que su utilización pueda crear una confusión real en la mente del electorado del Partido Nuevo Progresista, o que sea contraria, directa o implícitamente, al dictamen original del tribunal de instancia.

Lo acordó el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió voto disidente al cual se une el Juez Asociado Señor Rebollo López. El Juez Presidente Señor Pons Núñez no intervino.

(*Fdo.*) Bruno Cortés Trigo
*Secretario General*

—O—

Voto disidente del Juez Asociado Señor Negrón García, al cual se une el Juez Asociado Señor Rebollo López.

En el caso ante nos expediríamos el auto, revocaríamos la resolución del Tribunal Superior, Sala de San Juan, de 6 de junio de 1988, y en su lugar ordenaríamos a la Comisión Estatal de Elecciones excluir la equis (X) del símbolo del *coco* correspondiente a la aspirante Rosa M. Ramírez Pantojas (Rosín), preimpreso en las papeletas a usarse en las primarias del domingo 12 de junio en torno al cargo de Representante del Distrito Núm. 3, San Juan, por el Partido Nuevo Progresista (P.N.P.). Plasmemos los fundamentos.

I

Desde la perspectiva procesal-adjudicativa, dicha equis (X) es un cambio posterior incompatible con el remedio y razonamiento del tribunal de instancia en su sentencia original de 18 de mayo, inspirado en evitar cualquier confusión a

un elector promedio de dicho precinto de que ella era la candidata oficial y vinculante del P.N.P.(1)

La cuestión es trascendental. "Por naturaleza propia, individual y colectivamente el ser humano en el diario convivir tiende a identificarse con aquellas creencias y posiciones que satisfacen su ideario y espíritu; se comunica con sus congéneres y recibe de éstos mensajes e ideas, no solo por palabras sino a través de símbolos. Es natural pues, que [el] ... político ... aspire a lograr una correspondencia entre la combinación de palabras que forman el nombre pretendido y el diseño gráfico (emblema), de modo tal que con facilidad — visual y auditivamente— sea capaz de proyectar emocional o racionalmente por asociación mental, el contenido ideológico de los planes sociales, económicos y políticos que pretende someter al electorado." *Democratic Party v. Tribunal Electoral*, 107 D.P.R. 1, 30 (1978), opinión concurrente y disidente.

## II

La ausencia de una prohibición expresa en la Ley Electoral de Puerto Rico no es óbice para dicho decreto. Primero, tomamos conocimiento judicial de que la marca de una equis (X) —o su variante, una cruz (+)— debajo de la insignia de un partido o candidato ha sido y es el método tradicional y universal mediante el cual principalmente se ha hecho viable el ejercicio del voto en los procesos electorales puertorriqueños. *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 430 (1980) y apéndices; *Santos v. Comisión Estatal de Elecciones*, 111 D.P.R. 351, 360 (1981).

---

(1) En lo pertinente, dicho foro dispuso:
"Se ordena a la Comisión Estatal de Elecciones que *elimine* de la insignia escogida por la codemandada Rosa Ramírez Pantojas la frase 'Estamos con Albita' y que elimine el nombre que aparecerá de dicha demandada en la papeleta de elección de las primarias a celebrarse el próximo 12 de junio de 1988, la *referencia al nombre de (Albita)*." (Énfasis suplido.) Petición de *certiorari* de 7 de junio de 1988, pág. 4.

Tales marcas no son susceptibles de ser apropiadas ni usufructuadas en la papeleta oficial por ningún partido o candidato en particular. Por su naturaleza conceptual y funcional pertenecen propiamente al dominio común y público. Como tal, su uso está accesible y es legítimo sólo en la propaganda y publicidad preelectoral, pero ciertamente ahí acaba. Autorizar en una papeleta su uso individual oficial atenta contra esa naturaleza pública y, además, resulta en una ventaja impermisible. 16 L.P.R.A. sec. 3033(b). Segundo, su incorporación irrestricta conlleva en el fondo graves riesgos al proceso de escrutinio, dimanantes de su eventual proliferación por otros candidatos como única alternativa de reducir su impacto.

Y tercero, en el campo de las probabilidades, ante una papeleta en blanco, ¿reflejarán y tendrán algún valor la equis (X) o cruz (+) preimpresas en cuanto a la verdadera intención del elector? Aunque en buena lógica la respuesta tiende a ser en la negativa,(2) lo expuesto basta para dejar simple constancia del potencial de confusión que su uso puede generar en el proceso electoral. Evitémoslo.

Después de todo, la percepción de los símbolos se logra a través del sentido de la vista y no podemos "pasar por alto que la insignia colectiva e individual electoral, además de un instrumento mediante el cual se viabiliza la votación de candidatura íntegra, como medio de comunicación representa uno de los mecanismos para distinguir en la papeleta los partidos y candidatos, y *garantizar el derecho constitucional del voto al elector que no sabe leer ni escribir*". (Énfasis en el original y escolio omitido.) *Democratic Party v. Tribunal Electoral*, supra, pág. 31.

---

(2) La Ley Electoral de Puerto Rico define *papeleta en blanco* como "aquella que habiendo sido depositada en la urna por el elector no tenga marca alguna de votación". 16 L.P.R.A. sec. 3003(30). A su vez, *marca* "significará cualquier medio de expresión afirmativo del voto del elector". 16 L.P.R.A. sec. 3003(23).