EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Insular Highway Products, Inc.<br>Demandante<br><br>v.<br><br>American International Insurance Co.; Autoridad de Carreteras y Transportación de Puerto Rico; Del Valle Group, S.P.<br>Demandados-Recurridos<br><br><br>Highway Safety Corp.<br>Peticionaria-Interventora | Certiorari<br><br>2008 TSPR 153<br><br>175 DPR ____ |

Número del Caso: CC-2004-1116

Fecha: 9 de septiembre de 2008-09-17


Tribunal de Apelaciones:

        Región Judicial de Bayamón

Juez Ponente:

        Hon. Nydia M. Cotto Vives

Abogado de la Parte Peticionaria:

        Lcdo. Miguel E. Bonilla Sierra

Abogados de la Parte Recurrida:

        Lcdo. José A. Sánchez Álvarez
        Lcdo. Joshua M. Galarza Quiñones
        Lcda. Milagros Ruiz Chaar
        Lcda. María Eugenia Rosa Domenech
        Lcdo. Pedro Santiago Rivera


Materia: Cobro de Dinero, Incumplimiento de Contrato y Daños y Perjuicios.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Insular Highway Products, Inc.
          Demandante

                    v.

American International
Insurance Co.; Autoridad de
Carreteras y Transportación de
Puerto Rico; Del Valle Group,
S.P.
     Demandados-Recurridos


        Highway Safety Corp.
   Peticionaria-Interventora

*CERTIORARI*

CC-2004-1116

Opinión del Tribunal emitida por la Jueza Asociada SEÑORA FIOL MATTA

En San Juan, Puerto Rico, a 9 de septiembre de 2008.

La Regla 47 de Procedimiento Civil dispone que una moción de reconsideración oportunamente presentada y acogida por el Tribunal de Primera Instancia, interrumpe el término para presentar un recurso de apelación o *certiorari*, pero es muda al efecto de la interrupción de los términos relativos a las mociones que puedan presentar otras partes en el proceso. En la controversia ante nuestra consideración, tenemos la oportunidad de resolver si al acoger el Tribunal de Primera Instancia una oportuna moción de reconsideración se interrumpe el término jurisdiccional para que otra parte afectada por el mismo dictamen pueda presentar su propia

moción de reconsideración, prorrogándose de esta forma el plazo dispuesto por las Reglas de Procedimiento Civil.

I

La Autoridad de Carreteras y Transportación de Puerto Rico y Del Valle Group, S.P., firmaron un contrato a precio alzado para la construcción de carreteras. Del Valle Group, como contratista de los proyectos, subcontrató los servicios de Insular Highway Products, Inc. para la instalación de rótulos y barreras de seguridad. Insular Highway, a su vez, subcontrató los servicios de la peticionaria, Highway Safety Corp., para suplir los materiales de construcción.

El 31 de mayo de 2001, Highway Safety presentó una demanda en cobro de dinero contra Insular Highway y la Autoridad de Carreteras reclamando el pago de $94,435.91 por los materiales que suplió a Insular Highway y a la Autoridad de Carreteras en dos proyectos de mejoras a carreteras.

Insular Highway contestó la demanda y alegó que Highway Safety había entregado tardíamente los materiales y que se había acordado verbalmente que Insular Highway pagaría las sumas adeudadas tan pronto la Autoridad de Carreteras y Del Valle Group desembolsaran los fondos, cosa que no había ocurrido. Por esta razón alegó que la deuda no era ni líquida ni exigible. Además, presentó una demanda contra tercero para incluir a Del Valle Group y a su fiador, American International Insurance Co., y una demanda contra

coparte contra la Autoridad de Carreteras. Insular Highway alegó que Del Valle Group le adeuda $162,282.31, más intereses por las obras realizadas y no pagadas, además de los daños por el incumplimiento del contrato, ascendentes a $64,000. Alegó, además, que American International Insurance, como fiador, y la Autoridad de Carreteras, como dueña del proyecto, eran solidariamente responsables del pago por los servicios prestados, conforme al artículo 1489 del Código Civil.

El 7 de junio de 2001, Insular Highway presentó una demanda en cobro de dinero, incumplimiento de contrato y daños y perjuicios contra los aquí recurridos, Del Valle Group, American International Insurance y la Autoridad de Carreteras. En su demanda, Insular Highway presentó los mismos hechos y reclamaciones que había alegado en su contestación a la demanda de Highway Safety relacionada anteriormente.

Al contestar esa demanda, Del Valle Group reconvención y presentó una demanda contra coparte contra la Autoridad de Carreteras. En la reconvención, adujo que la ejecución de las obras al encargo de Insular Highway fue inadecuada y causó atrasos, creando costos adicionales estimados en $75,000, que Insular Highway le debería resarcir. En la demanda contra coparte, Del Valle Group expuso que la Autoridad de Carreteras le causó daños al retener pagos de otros proyectos hasta la cantidad que Insular Highway le estaba reclamando y que la deficiencia de esos fondos le

causó daños no menos de $50,000. La Autoridad de Carreteras negó que hubiera causa de acción en su contra y alegó que en todo momento había procedido con las retenciones de dinero a Del Valle Group conforme a las exigencias de la buena fe en su interpretación del artículo 1489 del Código Civil.

El 19 de abril de 2002, Insular Highway, Del Valle Group, la Autoridad de Carreteras, American International Insurance y Highway Safety llegaron al siguiente Acuerdo Transaccional:

> …Con miras a evitar los costos y tiempo que implican un proceso litigioso, las partes comparecientes han acordado dar por terminado el caso de epígrafe de conformidad con los términos y condiciones del acuerdo transaccional que a continuación se exponen:
>
> 1. La ACT [Autoridad de Carreteras] contrató a la firma del codemandada [sic] DVG [Del Valle Group] para la construcción de los proyectos que se detallan a continuación… DVG, a su vez subcontrató a Insular para la instalación de rótulos y barreras de seguridad en los ante detallados proyectos. **Al día de hoy, y luego de efectuar algunos pagos parciales, Insular tiene presentada ante DVG y la ACT las debidas certificaciones… para un total de $162,282.31.** Se adjunta y se hace formar parte del presente acuerdo transaccional las certificaciones de pago **ya presentadas a la ACT que acreditan las partidas anteriores.**
>
> 2. De los $162,282.31 de DVG que la ACT tiene retenidos en las obras objeto de controversia en el caso de autos, **la ACT procederá a efectuar un pago directo a Insular por la suma de $58,170.00.** Este pago se hará en o antes de quince (15) días a partir de la fecha de radicación de este acuerdo. Dicho pago se hará en un cheque mancomunado a la orden de Insular y Highway. La ACT acuerda pagarle a DVG la suma de $104,112.31 restantes retenidos de otros proyectos, y los cuales no forman parte de las sumas reclamadas en las certificaciones presentadas por Insular y DVG en el caso de

epígrafe, dentro del mismo plazo de quince (15) días a partir de la fecha de radicación.

3. Según ACT vaya aprobando las certificaciones **restantes** que ya hayan sido sometidas por DVG en los proyectos antes relacionados la ACT, para cada una de las certificaciones, efectuará el siguiente procedimiento de pago: (a) pagará a DVG en un cheque exclusivamente a su nombre aquella suma que no corresponda a los trabajos de Insular y (b) pagará mediante cheque mancomunado a la orden de DVG, Insular y Highway aquella suma correspondiente a los trabajos de Insular comprendidos en las certificaciones. Tanto DVG, Insular y Highway acuerdan entre si [sic] dividirse dichos cheques por las sumas correspondientes a cada cual según las certificaciones aprobadas u desembolsadas, y de conformidad con los términos de este acuerdo transaccional u los precios acordados entre DVG e Insular; y entre Insular y Highway. Ninguna de las partes renuncia a cuadrar al final de los pagos cualquier suma pagada de más o de menos durante el proceso.

4. De las sumas **pendientes** de pago Insular accede a pagarle a su acreedor Highway Safety proporcionalmente la deuda que ésta reclama en el caso Highway Safety Corp. v. Insular Highway Products, Inc., *et al.*, Civil Núm. 2001-1370 (506), ante este mismo tribunal. **Se acuerda específicamente de que del pago inicial de $58,170.00 descrito en el párrafo uno (1), le corresponderá a Highway Safety la suma de $44,000.00, y la diferencia le corresponderá a Insular.** Los pagos **posteriores** se efectuarán mediante un cheque mancomunado a nombre de DVG, Insular y Highway, y en la en la relación interna entre Insular Highway y Highway Safety se dividirán en partes iguales (50%-50%), hasta la total satisfacción de la deuda de Insular con Highway Safety. Convienen Insular y Highway, no obstante, que existe una controversia *bona fide* sobre una partida de $7,131.15 descontada de la certificación número 26… De la ACT proceder al descuento de dichas partidas por deficiencia de materiales, Highway Safety le reconocerá a Insular Highway un crédito por dicha suma de la deuda reclamada, haciéndose entonces la deducción correspondiente a la suma original reclamada de **$94,435.91.** En cambio si la ACT no descuenta dicha partida por deficiencias de materiales, entonces Insular reconocerá la totalidad de la deuda de Highway Safety la cual se pagará de conformidad a lo antes expuesto. Estos acuerdos

entre Insular y Highway no afectarán en forma alguna los precios acordados ente DVG e Insular no los derechos de ACT a rechazar trabajo que no cumpla con las especificaciones.

5.     DVG libera a Insular de toda responsabilidad de tener que ejecutar trabajo adicional alguno en los proyectos concernidos en este caso.

…

8.     **Todo reclamo directo o indirecto que se haya presentado en la demanda o demandas por cualquiera de las partes comparecientes queda por la presente expresamente renunciado con perjuicio.**

9.     **La sentencia que se dicte aprobando este acuerdo transaccional será final, firme e inapelable desde el momento en que se dicte** acordando las partes que se archive con perjuicio todas las reclamaciones en el caso Highway Safety Corp. v. Insular Highway Products, Inc., *et al.*, Civil Núm. 2001-1370 (506), ante este Honorable Tribunal. (Énfasis suplido.)

La transacción se presentó en ambos casos, ya que las dos demandas no fueron consolidadas. El Tribunal de Primera Instancia acogió la transacción en el caso instado por Insular Highway el 26 de abril de 2002, mediante sentencia que según sus términos, advino final y firme.

Posteriormente, el 20 de septiembre de 2002, Highway Safety solicitó la ejecución de dicha sentencia como parte interventora en la demanda de Insular Highway. Adujo que la Autoridad de Carreteras había incumplido el acuerdo transaccional al expedir un cheque directamente a Del Valle Group. Aunque la Autoridad de Carreteras le había exigido a Del Valle Group que pagara a Insular Highway las sumas acordadas, Del Valle Group solamente pagó $22,844.89 como liquidación final de los pagos debidos en los proyectos. Highway Safety solicitó el cumplimiento específico de las condiciones de la sentencia y una vista evidenciaria a los

efectos de imponer sanciones por dicho incumplimiento. Del Valle Group, por su parte, alegó no deber suma alguna dado que el 6 de junio de 2002 la Autoridad de Carreteras había emitido un cheque mancomunado por $58,170 a nombre de Highway Safety e Insular Highway, en cumplimiento de lo debido.

El 17 de enero de 2003, Highway Safety volvió a solicitar la ejecución de la sentencia, alegando que Del Valle Group y la Autoridad de Carreteras le debían aún $50,435.91 por materiales suplidos.[1] Del Valle Group y la Autoridad de Carreteras se opusieron y afirmaron que a Highway Safety no se le adeudaba nada. Además, la Autoridad de Carreteras alegó que **a pesar que al momento de firmar el acuerdo transaccional el dinero de las certificaciones pendientes de pago ya se había liquidado** a Del Valle Group hacía más de dos años, no había un incumplimiento del acuerdo toda vez que no existía una deuda.

El Tribunal de Primera Instancia declaró con lugar la moción de ejecución de sentencia el 19 de febrero de 2003 y ordenó a la Autoridad de Carreteras y Del Valle Group pagar solidariamente a Highway Safety las sumas alegadamente debidas, ascendentes a $50,435.91. **Dicha orden se notificó el 20 de marzo de 2003.**

El 2 de abril de 2003, dentro del término dispuesto para ello por el ordenamiento procesal, Del Valle Group

---

[1] Esta cifra resulta del descuento del pago de $44,000 al total de $94,435.91 que surge del Acuerdo Transaccional.

presentó una moción solicitando al tribunal que reconsiderara la orden de ejecución de sentencia. Alegó nuevamente que no se adeudaban dichas sumas. Además, solicitó que se dejara en suspenso la orden de ejecución de sentencia hasta tanto el tribunal celebrara una vista y adjudicara las cantidades a pagar, si alguna.  El 4 de abril de 2003, **el Tribunal de Primera Instancia <u>acogió</u> la moción de reconsideración** con la siguiente frase: "se considerará en vista señalada"; sin embargo, no dispuso fecha para celebrar dicha vista.  La resolución se notificó el 8 de abril del mismo año.  **El 10 de abril de 2003 la Autoridad de Carreteras presentó una moción de reconsideración** en la que solicitó que se declarara que la Autoridad no era un deudor solidario con Del Valle Group frente a Insular Highway y Highway Safety porque ya había desembolsado lo que le correspondía.

**El 11 de abril de 2003, el Tribunal de Primera Instancia dejó sin efecto la orden del 4 de abril en la que había acogido la moción de reconsideración de Del Valle Group** y en orden separada, mandó a embargar bienes propiedad de Del Valle Group para cubrir la cantidad de $104,112.31 como aseguramiento de la sentencia que había advenido final y firme. **Ambas órdenes se notificaron el 15 de abril de 2003.** Posteriormente, el 17 de abril de 2003, el tribunal de instancia acogió la moción de reconsideración presentada por la Autoridad de Carreteras y ordenó a la parte demandante expresarse en un término de

diez días. Esta orden fue notificada el 23 de abril de 2003.

En cumplimiento de la orden, Highway Safety replicó a la moción de reconsideración que había presentado la Autoridad de Carreteras. Adujo que la comparecencia de la Autoridad de Carreteras fue tardía toda vez que su moción de reconsideración se presentó cuando ya había transcurrido el término jurisdiccional de 15 días desde la notificación de la sentencia. No obstante, el 16 de junio de 2003, el foro de instancia celebró una vista para dilucidar el asunto de si hubo un error en el acuerdo sobre la cantidad de la deuda. Posteriormente, Del Valle Group solicitó que se dictara sentencia sumariamente a los efectos de reconocer que hubo un error al otorgar el acuerdo transaccional y que Del Valle Group le pagó a Insular Highway lo debido según las certificaciones, menos la cantidad de $22,844.89. Highway Safety se opuso a la moción de sentencia sumaria bajo el fundamento que era improcedente toda vez que la orden de ejecución de sentencia ya era final y firme.

Finalmente, el Tribunal de Primera Instancia resolvió que la transacción entre las partes era válida y puso fin al pleito. En particular, dispuso lo siguiente:

> Esta [sic] claro que la controversia en el caso de autos finalizó cuando este Tribunal impartió su aprobación al Acuerdo Transaccional que suscribieron las partes. No podemos, por tanto, ampararnos en un alegado error o confusión en la interpretación de una cláusula contenida en el mismo, para de este modo, circunvalar el

incumplimiento de la Sentencia dictada por acuerdo de las partes; ello conllevaría a aplaudir este tipo de acción y resultaría en un fracaso de la justicia.

Por tanto, **el tribunal declaró con lugar la solicitud de ejecución de la sentencia del 19 de febrero, notificada el 20 de marzo de 2003** y sin lugar la moción de sentencia sumaria. Así pues, ordenó el retiro de los $104,112.31 anteriormente consignados y la entrega de dicha suma a Insular Highway. **Dicha resolución se emitió el 28 de octubre de 2003 y fue notificada el 4 de noviembre de 2003.**

Inconforme con la determinación del tribunal de instancia que denegó la sentencia sumaria y ordenó la ejecución de la sentencia, Del Valle Group presentó un recurso de *certiorari* ante el Tribunal de Apelaciones el 4 de diciembre de 2003. La Autoridad de Carreteras compareció y solicitó al foro apelativo que revocara la Resolución recurrida para establecer que la Autoridad de Carreteras no adeuda nada dentro del acuerdo transaccional. Por su parte, Highway Safety se opuso a la expedición del recurso alegando, entre otras cosas, que Del Valle Group y la Autoridad de Carreteras están obligados a pagarle solidariamente a Highway Safety la suma de $50,435.91 en cumplimiento de la orden "final, firme e inapelable" que emitió el Tribunal de Primera Instancia, notificada el 20 de marzo de 2003. Además, expuso lo siguiente:

> La moción de reconsideración presentada por la Autoridad de Carreteras el 10 de abril de 2003, mediante la cual se pretendió que el Tribunal de Primera Instancia dejara sin efecto la orden notificada el 20 de marzo de

2003, fue presentada luego de transcurrido el término provisto por las Reglas de Procedimiento Civil y por consiguiente el Tribunal de Primera Instancia venía obligado a abstenerse de emitir órdenes posteriores relacionadas con la aludida moción de reconsideración por carecer de jurisdicción para así hacerlo.

Luego de evaluar los planteamientos de las partes, el Tribunal de Apelaciones emitió sentencia el 21 de octubre de 2004 en la que desestimó la demanda contra la Autoridad de Carreteras y revocó la resolución recurrida. Interpretando el Acuerdo Transaccional, el foro apelativo concluyó que la obligación de pagar las sumas acordadas estaba sujeta a la condición de incluir las certificaciones que acreditaban la deuda y al no cumplirse esta condición, dicha cláusula del acuerdo quedó invalidada. Además, el tribunal apelativo ordenó la devolución del caso al Tribunal de Primera Instancia para que se determinara la cantidad, si alguna, que Del Valle Group le debía a Insular Highway y Highway Safety.

Inconforme, Highway Safety recurrió ante nosotros y alegó que el Tribunal de Apelaciones cometió varios errores, que en resumen consistieron en que dicho foro actuó en ausencia de jurisdicción.[2] Así pues, expedimos el

---

[2] PRIMER ERROR: Erró el Honorable Tribunal de Apelaciones al no reconocer que la orden dictada a Del Valle Group, S.P. y la Autoridad de Carreteras y Transportación de Puerto Rico a pagar solidariamente a Highway Safety Corp. la suma de $50,435.91 advino final, firme e inapelable y por consiguiente el Tribunal de Primera Instancia carecía de jurisdicción para entender en las mociones de reconsideración presentadas por la Autoridad de Carreteras y Del Valle Group, S.P.

auto de *certiorari* el 11 de marzo de 2005 y el 5 de agosto de 2005 paralizamos los procedimientos en auxilio de nuestra jurisdicción. Posteriormente, Highway Safety, Del Valle Group, American International Insurance y la Autoridad de Carreteras presentaron sendos alegatos y contando con su comparecencia, pasamos a resolver.

---

SEGUNDO ERROR: Erró el Honorable Tribunal de Apelaciones al implícitamente dejar sin efecto la orden dictada el 19 de febrero de 2003, notificada el 20 de marzo de 2003 requiriendo a Del Valle Group, S.P. y la Autoridad de Carreteras y Transportación de Puerto Rico a pagar solidariamente a Highway Safety Corp. la suma de $50,435.91 cuando no tenía jurisdicción para así hacerlo por razón que la misma había advenido final, firme e inapelable.

TERCER ERROR: Erró el Honorable Tribunal de Apelaciones al desestimar la demanda contra la Autoridad de Carreteras y Transportación de Puerto Rico bajo el fundamento de que ésta no adeudaba cantidad alguna a Del Valle Group, S.P., Insular Highway Products, Inc. o Highway Safety Corp. cuando no tenía jurisdicción para así hacerlo por razón que la orden dictada el 19 de febrero de 2003, notificada el 20 de marzo de 2003, requiriendo a Del Valle Group, S.P. y la Autoridad de Carreteras y Transportación de Puerto Rico a pagar solidariamente a Highway Safety Corp. la suma de $50,435.91 advino final y firme.

CUARTO ERROR: Erró el Honorable Tribunal de Apelaciones al interpretar el contrato de transacción suscrito entre las partes de forma tal que se permitió a Del Valle Group, S.P. eludir su responsabilidad por el pago de las cantidades adeudadas a Highway Safety Corp. fundamentado en el alegado error cometido por la Autoridad de Carreteras de Puerto Rico al suscribir el mismo.

QUINTO ERROR: Erró el Honorable Tribunal de Apelaciones al invalidar implícitamente el contrato de transacción suscrito entre las partes y ordenar una vista evidenciaria donde se permita a Del Valle Group, S.P. establecer la cantidad realmente adeudada a Insular Highway Products, Inc. y Highway Safety Corp.

SEXTO ERROR: Erró el Honorable Tribunal de Apelaciones al concluir que el pago de las cantidades expresadas en el contrato de transacción estaba condicionado a que se incluyeran como parte del mismo las certificaciones que acreditaban la deuda.

II

La Regla 53.1(e) de Procedimiento Civil, en su primer inciso, dispone que el recurso de *certiorari* para revisar cualquier orden o resolución del Tribunal de Primera Instancia se deberá presentar al Tribunal de Apelaciones dentro de los treinta días desde la fecha de la notificación de la orden o resolución recurrida. Sin embargo, dicho término es de cumplimiento estricto y, por tanto, prorrogable, pero sólo si median circunstancias especiales que consten del recurso. 32 L.P.R.A. Ap. III R. 53.1(e)(1). Además, Regla 53.1(i) de Procedimiento Civil establece que **el término** para presentar una solicitud de *certiorari* ante el Tribunal de Apelaciones "se interrumpirá y comenzará a contarse de nuevo de conformidad con lo dispuesto en la Regla 47". 32 L.P.R.A. Ap. III, R. 53.1(i). En lo pertinente, la Regla 47 de Procedimiento Civil establece lo siguiente:

> La parte adversamente afectada por una resolución, orden o sentencia del Tribunal de Primera Instancia podrá, dentro del término **jurisdiccional** de quince (15) días desde la fecha de la notificación de la resolución u orden, o desde el archivo en los autos de una copia de la notificación de la sentencia, presentar una moción de reconsideración de la resolución, orden o sentencia….
> Por otro lado, si se tomare alguna determinación en la consideración de una moción de reconsideración, **el plazo para presentar un recurso de *certiorari* con término de cumplimiento estricto ante el Tribunal de… Apelaciones empezará a contarse desde la fecha en que se notifica la resolución del tribunal resolviendo definitivamente la moción.** Si el tribunal dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los

> diez (10) días de haber sido presentada, se entenderá que la misma ha sido rechazada de plano. (Énfasis nuestro.) 32 L.P.R.A. Ap. III, R. 47.

La Regla 47 antes citada dispone las diferentes situaciones en que una moción de reconsideración podría interrumpir el término dispuesto para que las partes recurran al foro apelativo en revisión de un dictamen judicial. De igual forma, tanto las Reglas de Procedimiento Civil como nuestra jurisprudencia interpretativa reconocen que la interrupción del término por esta causa beneficia a todas las partes por igual. 32 L.P.R.A. Ap. III, R. 53.1(j). Pérez Vélez v. VPH Motors Corp. et al., 152 D.P.R. 475 (2000). Sin embargo, ni las reglas ni la jurisprudencia han precisado si la presentación de una moción de reconsideración tiene algún efecto sobre los términos dentro de los cuales otras partes afectadas por el mismo dictamen deben presentar sus mociones ante el Tribunal de Primera Instancia. Los hechos de este caso nos proveen la oportunidad de aclarar la norma aplicable a esta situación.

Es harto sabido que un término jurisdiccional es "*fatal, improrrogable e insubsanable*, rasgos que explican por qué no puede acortarse, como tampoco es susceptible de extenderse". (Énfasis en el original.) Martínez, Inc. v. Abijoe Realty Corp., 151 D.P.R. 1 (2000). Véase Vega Maldonado v. Alicea Huacuz, 145 D.P.R. 236 (1998); Gobernador v. Alcalde de Juncos, 121 D.P.R. 552 (1988). En cuanto al término para presentar una moción de

reconsideración, hemos resuelto que éste es jurisdiccional y su transcurso tiene el efecto de impedir que el tribunal pueda considerarla. Junta de Planificación v. Frente Unido, 2005 T.S.P.R. 117. A esos efectos, en Dumont v. Inmobiliaria Estado, Inc., resolvimos que los tribunales pueden enmendar sustancialmente sus sentencias siempre que éstas no hayan advenido final y firme y el tribunal actúe por motivo de una moción de reconsideración **oportuna**, es decir, presentada dentro del término jurisdiccional establecido por la Regla 47 y acogida para su consideración según ésta dispone. 113 D.P.R. 406, 413 (1982).

Hemos reconocido, como excepción a la norma anterior, que un tribunal puede considerar una moción de reconsideración tardía cuando lo que ésta plantea sea de tal envergadura que sería un fracaso de la justicia ignorarlo.[3] En esa situación puede recurrirse a la normativa aplicable a las mociones de relevo bajo la Regla 49.2 de Procedimiento Civil. Ahora bien, para que los tribunales puedan acoger la moción de reconsideración presentada fuera de los términos jurisdiccionales como una moción de relevo, se tienen que cumplir los requisitos establecidos en la Regla 49.2.  32 L.P.R.A. Ap. III.[4]  Véase Vega Maldonado v.

---

[3] En Ortiz Serrano v. Ortiz Díaz, 106 D.P.R. 445 (1977), establecimos que "[l]a Regla 49.2 provee un mecanismo procesal post sentencia para impedir tecnicismos y sofisticaciones frustren los fines de la justicia." Íd., pág. 449.

[4] La Regla 49.2, supra, dispone que "[m]ediante moción y bajo aquellas condiciones que sean justas, el tribunal podrá relevar a una parte o a su representante legal de una

Alicea Huacuz, supra, pág. 243-244; Pagán v. Alcalde Mun. de Cataño, 143 D.P.R. 314 (1997); Barreto v. Sherris Caribbean, Inc., 92 D.P.R. 859 (1965). Claro está, nada de lo antes dicho afecta la facultad de los tribunales para reconsiderar sus determinaciones *motu proprio*, siempre que tengan jurisdicción para hacerlo. Véase Lagares v. E.L.A., 144 D.P.R. 601, 613 (1997); Dumont v. Inmobiliaria Estado, Inc., supra, pág. 413; El Mundo, Inc. v. Tribunal Superior, 92 D.P.R. 791, 801 (1965).

No hay duda que el término de quince días para presentar una moción de reconsideración es jurisdiccional y, por lo tanto, fatal e improrrogable. Por ejemplo, en Vega Maldonado v. Alicea Huacuz, supra, discutimos las reglas procesales que recogen la normativa de la interpretación de los términos y las disposiciones particulares sobre la potestad de los tribunales para otorgar prórrogas. En particular, señalamos que la Regla 68.2 de Procedimiento Civil prohíbe que un tribunal pueda prorrogar o reducir el plazo para actuar bajo la disposición de las reglas 47 y

sentencia, orden o procedimiento por las siguientes razones:
(1) Error, inadvertencia, sorpresa, o negligencia excusable;
(2) descubrimiento de evidencia esencial…;
(3) fraude,… falsa representación u otra conducta impropia de una parte adversa;
(4) nulidad de sentencia;
(5) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor, o
(6) cualquier razón que justifique la concesión de un remedio contra los efectos de una sentencia.

53.1, entre otras.   32 L.P.R.A. Ap. III, R. 68.2.   De esa forma, resolvimos que la Regla 68.3, que extiende los términos de las reglas cuando la notificación es por correo, no aplica los términos dispuestos en la Regla 47 de Procedimiento Civil, toda vez que ésta establece un término jurisdiccional.   Además, expresamos lo siguiente:

> El término de la Regla 47, _supra_, en una sentencia es fatal.   (Citas omitidas.) Sin embargo, se ha quedado en el tintero si igual solución rige en cuanto a las resoluciones y órdenes.   Una teoría, que ha sido acogida por el reputado Tribunal de Circuito de Apelaciones, presenta que el término es directivo, pues las órdenes y resoluciones interlocutorias carecen de finalidad y, por ende, contra ellas no transcurren términos jurisdiccionales.   Según ésta, el tribunal conserva la facultad de corregirlas antes de que termine el pleito.   O sea, por ser interlocutorias, se les niega inmediatez y finalidad.
>
> La dificultad de este enfoque radica en que esos dictámenes—salvo una _reconsideración oportuna… —_ponen fin a incidentes _dentro del proceso litigioso escalonado._   Negarle finalidad es simplemente poner en entredicho ante abogados y partes la certeza, seriedad y autoridad que debe caracterizar nuestro sistema procesal—adjudicativo en todas sus _etapas críticas antes de que se dicte sentencia_ e, incluso, luego de ser dictada. (Énfasis en el original.) Vega Maldonado v. Alicea Huacuz, supra, pág. 240-241.([5])

---

[5] En Vega Maldonado v. Alicea Huacuz, supra, consideramos aspectos de eficiencia y "la certeza, seriedad y autoridad que debe caracterizar nuestro sistema procesal—adjudicativo", ya que al momento de resolver el caso, las Reglas de Procedimiento Civil no establecían explícitamente que los términos de la Regla 47, supra, fueran jurisdiccionales.   Sin embargo había jurisprudencia que resolvía que dicho término era jurisdiccional.   Véase, Barletta v. Tribunal Superior, 100 D.P.R. 691 (1972); Builders Ins. Co. v. Tribunal Superior, 100 D.P.R. 401 (1972); Rodríguez v. Rodríguez, 98 D.P.R. 744 (1970); Barreto v. Sherris Caribbean, Inc., 92 D.P.R. 859 (1965).

Esta discusión hace alusión a una disyuntiva que por mucho tiempo aquejaba a nuestro ordenamiento procesal. En _Las Monjas Racing Corp. v. Comisión Hípica_ resolvimos claramente que desde la notificación de una sentencia final, que resuelve definitivamente el pleito, comienzan a cursar los términos jurisdiccionales para recurrir al foro apelativo, con el efecto de privar al tribunal sentenciador de toda potestad en cuanto al caso. 52 D.P.R. 445 (1937). Consecuentemente, por el efecto jurisdiccional se deducía que el término para presentar una petición de reconsideración sobre las sentencias finales merecía el mismo respeto. Sin embargo, a las órdenes o resoluciones no se les aplicaba el mismo rigor jurisdiccional, por no tratarse de asuntos que ponían fin al pleito. Sánchez Martínez, _La reconsideración de resoluciones u órdenes interlocutorias y de sentencias finales_, 15 Revista Jurídica U.I.P.R. 367 (1981).

En _Vega Maldonado v. Alicea Huacuz_, supra, resumimos esta situación y resolvimos que los asuntos interlocutorios y las sentencias finales merecen considerarse con la misma seriedad. En fin, resolvimos que el término de quince días para presentar una moción de reconsideración es jurisdiccional, independientemente la naturaleza del dictamen emitido por el tribunal.

Hemos dicho que la Regla 47, _supra_, tiene dos propósitos:

> En lo primordial, por un lado, se busca crear la oportunidad para que un tribunal

sentenciador pueda realizar la significativa tarea de corregir cualquier error que haya cometido al dictar una sentencia o resolución. Por otro lado, también se quiere evitar que el medio procesal de la reconsideración se convierta en una vía para dilatar injustificadamente la ejecución de un dictamen judicial. Lagares v. E.L.A., supra, pág. 612.

Las Reglas de Procedimiento Civil aspiran a establecer un procedimiento justo y rápido para la tramitación eficiente de los litigios en los tribunales, por lo que la interpretación de dicho cuerpo reglamentario no debe ser contraria a la economía procesal. 32 L.P.R.A. Ap. III, R. 1. Véase J.T.P Dev. Corp. v. Majestic Realty Corp., 130 D.P.R. 456, 464 (1992); Polanco v. Tribunal Superior, 118 D.P.R. 350, 357 (1987); Lluch v. España Service Sta., 117 D.P.R. 729, 744-745 (1986). Así pues, es necesario identificar un balance prudente entre el deseo de preservar la justicia en los casos particulares y la utilización más sensata de los recursos de los tribunales para asegurar que los pleitos gocen de "certeza, seriedad y autoridad" evitando así que duren indefinidamente. Véase Vega Maldonado v. Alicea Huacuz, supra, pág. 241. Del mismo modo, Cuevas Segarra señala lo siguiente:

La demora y la falta de diligencia en la tramitación de los asuntos ante los tribunales atenta contra el principio rector que permea todo nuestro ordenamiento procesal y que está plasmado en la Regla 1 a los efectos que las controversias en los tribunales se solucionen de manera justa, rápida y económica. Este principio rector es eje central del debido proceso de ley. I J.A. Cuevas Segarra, Tratado de derecho procesal civil, Publicaciones JTS, pág. 12 (2000).

III

El Tribunal de Primera Instancia declaró con lugar la moción de ejecución de sentencia el 19 de febrero de 2003 y ordenó a la Autoridad de Carreteras y Del Valle Group pagar solidariamente a Highway Safety las sumas alegadamente debidas, ascendentes a $50,435.91. Dicha orden se notificó el 20 de marzo de 2003. Como vimos, Del Valle Group presentó una moción de reconsideración, que el Tribunal de Primera Instancia inicialmente acogió, pero posteriormente denegó el 11 de abril, en resolución notificada el 15 de abril de 2003. El término para recurrir de esta determinación comenzó a decursar desde la notificación y advino final y firme el 15 de mayo de 2003. Por lo tanto, el Tribunal de Apelaciones no tenía jurisdicción para atender el recurso presentado el 4 de diciembre de 2003.

El lenguaje de la Regla 47, supra, dispone claramente que el término para presentar una moción de reconsideración es un plazo jurisdiccional. La jurisprudencia interpretativa ha sido consecuente en señalar que el acoger una oportuna moción de reconsideración tiene el efecto de interrumpir el término para recurrir a un foro apelativo. Extender esta interpretación hasta concluir que la interposición de una moción de reconsideración por una de las partes tiene el efecto de otorgar una prórroga a las demás conllevaría el que la diligencia de una de las partes en un pleito libere a las demás de su obligación de ser igualmente diligentes. Además, esas partes igualmente

afectadas por el dictamen se beneficiarían de una extensión al término que las Reglas de Procedimiento Civil no vislumbran. No sólo sería injusto que la diligencia de uno subsane la demora injustificada de otro sino que corrompería la naturaleza jurisdiccional del término y permitiría la presentación de mociones que de otra forma serían tardías, en detrimento a la economía procesal. Por lo tanto, la moción de reconsideración que presentó la Autoridad de Carreteras 21 días después de notificada la orden estaba fuera de término y el Tribunal de Primera Instancia estaba impedido de actuar sobre ella.

Hemos reconocido la facultad de los tribunales para reconsiderar sus determinaciones *motu proprio* siempre que tengan jurisdicción para hacerlo. Véase <u>Lagares v. E.L.A.</u>, 144 D.P.R. 601, 613 (1997); <u>Dumont v. Inmobiliaria Estado, Inc.</u>, supra, pág. 413; <u>El Mundo, Inc. v. Tribunal Superior</u>, 92 D.P.R. 791, 801 (1965). La jurisprudencia citada ilustra situaciones en las que los tribunales han resuelto mociones de reconsideración **oportunamente presentadas**, que por haber pasado el plazo de diez días dispuestos por las Reglas se entenderían rechazadas de plano. No obstante, hemos resuelto que en estos casos los tribunales pueden entrar a resolver *motu proprio*, siempre que aún conserven su jurisdicción.

El caso ante nuestra consideración es distinto. El Tribunal de Primera Instancia acogió la moción de reconsideración oportunamente presentada por Del Valle

Group antes que transcurriera el término para que se entendiera rechazada de plano por inacción y, luego de analizarla, dejó sin efecto esa orden y resolvió que procedía la ejecución de la sentencia. Ninguna de las partes solicitó la reconsideración de este asunto ni presentó un recurso ante el Tribunal de Apelaciones. Por lo tanto, esa orden, notificada el 15 de abril de 2003, advino final y firme.

En segundo lugar, los hechos de este caso muestran con claridad que el tribunal de instancia actuó a solicitud de parte sobre la moción de reconsideración de la Autoridad de Carreteras y no *motu proprio*.[6]

La Resolución del 28 de octubre de 2003, notificada el 4 de noviembre de 2003, que ordenó nuevamente la ejecución de la sentencia, respondió a una moción de reconsideración tardía presentada por la Autoridad de Carreteras, la cual el tribunal estaba impedido de atender. Así pues, el Tribunal de Primera Instancia no tenía facultad para acoger dicha moción de reconsideración tardía y celebrar una vista para adjudicar lo allí alegado, menos aún cuando esa actuación atenta contra la finalidad del acuerdo transaccional aprobado por el tribunal mediante sentencia

---

[6] De los hechos surge que el Tribunal de Primera Instancia no sólo acogió la moción de reconsideración tardía presentada por la Autoridad de Carreteras, sino que declaró sin lugar la moción de reconsideración de Del Valle Group y ordenó a la parte demandante expresarse en cuanto a los planteamientos de la moción de reconsideración de la Autoridad de Carreteras. Luego celebró una vista para dilucidarla.

que es final y firme. Sabemos que al expresarse sobre una moción presentada fuera de los términos jurisdiccionales dispuestos para ello, el tribunal actúa en exceso de su facultad. Asimismo, una expresión del foro apelativo sobre esa expresión indebida del foro primario es igualmente improcedente.[7]

Resolvemos que una orden del Tribunal de Primera Instancia acogiendo una moción de reconsideración no tiene el efecto de prorrogar el plazo jurisdiccional con el que deben cumplir las demás partes afectadas por el mismo dictamen que interesen presentar mociones de reconsideración. Por los fundamentos antes expuestos, revocamos la sentencia del Tribunal de Apelaciones recurrida y la Resolución del Tribunal de Primera Instancia del 28 de octubre de 2003 que fueron dictadas, ambas, sin

---

[7] Una vez el acuerdo voluntario se convierte en un dictamen judicial final y firme sujeto a los procedimientos de ejecución de sentencia y demás garantías de un proceso judicial, es decir, en una transacción judicial, el procedimiento para impugnarlo es mediante una solicitud de relevo de sentencia provista en la Regla 49.2 de Procedimiento Civil, supra. Como el propósito de la Regla 49.2, supra, es evitar un fracaso de la justicia, hemos resuelto que no aplica la consideración la doctrina de cosa juzgada. Véase Pérez v. Bauzá, 83 D.P.R. 220 (1961). En el caso particular de un contrato de transacción judicial, el fracaso de la justicia que se evitaría por el relevo del dictamen judicial sería el que se vulneraran los principios contractuales, como, por ejemplo, el dejar impunes los actos que vician el consentimiento establecidos en el artículo 1716 del Código Civil, supra. En este caso, el Tribunal de Primera Instancia no podía acoger la moción de reconsideración tardía como una petición de relevo de sentencia bajo la Regla 49.2, supra, pues las alegaciones de la Autoridad de Carreteras en la moción de reconsideración no constituyen el tipo de error que puede conllevar la resolución de un contrato de transacción, sobre todo cuando no estamos ante un caso de negligencia excusable que amerite relevar de la sentencia.

jurisdicción y restablecemos la orden de ejecución de la sentencia del 19 de febrero de 2003.

Se dictará sentencia de conformidad.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Insular Highway Products, Inc.
        Demandante

                v.

American International
Insurance Co.; Autoridad de
Carreteras y Transportación de
Puerto Rico; Del Valle Group,
S.P.
        Demandados-Recurridos

        Highway Safety Corp.
    Peticionaria-Interventora

*CERTIORARI*

CC-2004-1116

*SENTENCIA*

En San Juan, Puerto Rico, a 9 de septiembre de 2008.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, revocamos la sentencia del Tribunal de Apelaciones recurrida y la Resolución del Tribunal de Primera Instancia del 28 de octubre de 2003 que fueron dictadas, ambas, sin jurisdicción y restablecemos la orden de ejecución de la sentencia del 19 de febrero de 2003.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo