*733 TEXTO COMPLETO DE LA SENTENCIA EN RECONSIDERACIÓN
Mediante resolución emitida el 8 de septiembre de 2009, en reconsideración y a iniciativa propia, dejamos sin efecto la sentencia emitida el 11 de agosto de 2009, en los recursos consolidados KLAN-2009-00764 y KLAN-2009-00784. Nuestro dictamen en reconsideración, se fundamentó en que Guillermo Colón Rivero había instado un recurso de apelación, KLAN-2009-01101, y Waldemar Torres Cintrón y Maricela Rodríguez Martínez, por sí y en representación de la Sociedad Legal de Gananciales compuesta por ambos, a su vez presentaron el recurso de apelación KLAN-2009-01106, sobre la sentencia antes aludida.
Estos últimos recursos, no habían sido incluidos en la sentencia emitida el 11 de agosto de 2009, pues fueron asignados a otro panel de este foro intermedio apelativo. A tal fin y una vez se nos informó por la Secretaria del Tribunal de Apelaciones dicha situación procesal, se ordenó la consolidación de dichos recursos con los recursos de apelación KLAN-20009-00764 y KLAN-2009-00784, mediante resolución de 8 de septiembre de 2009. (Véase, Resolución del TA de 8 de septiembre de 2009.) Así consolidados los recursos, mediante sentencia emitida el 8 de septiembre de 2009, se desestimó el recurso de apelación KLAN-2009-1106, presentado por Waldemar Torres Cintrón, et ais., por ser un duplicado del recurso apelativo KLAN-2009-00784. (Véase, Sentencia del TA de 8 de septiembre de 2009.)
Por lo tanto, una vez resuelto que los recursos que estaban bajo la jurisdicción del foro apelativo para su disposición final eran los denominados KLAN200900764, KLAN-2009-00784 y KLAN-2009-01101 y pautado el trámite para presentar los alegatos por las partes apeladas, y así cumplido, procedemos a resolver las apelaciones presentadas. Se modifica la sentencia del foro de instancia aumentado la cuantía concedida a Carlos Hernández Miranda por concepto de daños a $ 125,000, la cuantía concedida a Carlos Hernández Pérez se aumenta a $ 10,000 y la cuantía de Elba I. Miranda Matos a $20,000. Se le impone a Víctor Martínez Martínez el pago en honorarios de abogado de $15,000 a favor de Carlos Hernández Miranda, et ais. Se revoca la sentencia impuesta al coapelante Guillermo Colón Rivero, et ais. y se confirma la sentencia apelada sobre los demás extremos, según sus términos y condiciones. Veamos los fundamentos de nuestro dictamen.
I
El apelante Carlos Hernández Miranda, et ais., presentó demanda el 20 de enero de 2000 en daños y perjuicios contra el coapelante Waldemar Torres Cintrón, et ais. (dueño de la Mueblería Waldemar); el apelado *734 Víctor Martínez Martínez (constructor del ascensor); Guillermo Colón Rivero, et ais. (a cargo del mantenimiento del ascensor); y Jesús Hernández Torres, et ais. Alegaba en su demanda que el 22 de enero de 1999, mientras trabajaba para Waldemar Torres en el negocio conocido como Mueblerías Waldemar, en ocasión en que se disponía almacenar una mercancía en el tercer piso de las facilidades de dicha empresa, haciendo uso de un ascensor, al llegar al tercer piso dicho ascensor cayó al vacío, sufriendo daños.
Asimismo, que la causa única del accidente fue la negligencia combinada de los demandados Waldemar Torres, et ais., Víctor Martínez, Guillermo Colón, et ais., y Jesús Hernández, et al., al permitir y alentar el uso del referido ascensor a pesar de no cumplir con los requisitos mínimos de seguridad. Sostuvo a su vez que los demandados Waldemar Torres, et ais., Víctor Martínez, Guillermo Colón, et ais., y Jesús Hernández et al., tenían bajo su control exclusivo el diseño, construcción y mantenimiento del referido ascensor y su desprendimiento al vacío no hubiera ocurrido si no hubiera mediado la negligencia por los vicios de construcción de los que adolecía. (Ap. I, págs. 7-8.) Los aludidos demandados presentaron sus contestaciones a la demanda negando responsabilidad, el patrono por inmunidad y el constructor por no haber tenido inherencia en el diseño, construcción y mantenimiento del ascensor. (Ap. II-VI; págs. 8-23.)
El apelado Víctor Martínez, presentó demanda de coparte contra el coapelante Waldemar Torres y contra Guillermo Colón, alegando que la causa del accidente fue la negligencia solidaria de éstos al permitir el uso del ascensor sin brindarle mantenimiento adecuado requerido y a sabiendas que el mismo estaba defectuoso. (Ap. VII, págs. 24-25.) Estas circunstancias fueron contestadas, alegando, entre otras cosas, que la única causa del accidente fue la negligente construcción del ascensor. (Ap. VIII, págs. 26-28.)
Luego, Waldemar Torres presentó demanda de coparte contra Víctor Martínez por los daños sufridos al no poder utilizar el elevador defectuosamente construido y por los gastos en que habría de incurrir para repararlo. (Ap. IX, págs. 29-32.) También sobre dicha demanda se presentó contestación, en la cual Víctor Martínez negaba responsabilidad civil. (Ap. X, págs. 33-35.)
El 9 de abril de 2002, el tribunal de instancia dictó sentencia parcial de desistimiento con perjuicio de las mutuas reclamaciones presentadas por Carlos Hernández y los demandados Jesús Hernández, et al. (Ap. XII, págs. 39-41.) El foro de instancia dictó sentencia parcial el 31 de mayo de 2006, desestimando las reclamaciones de la demanda de Waldemar Torres, al amparo de la inmunidad patronal conferida por la ley habilitadora del Fondo del Seguro del Estado. (Ap. XIV, págs. 63-68.)
El tribunal de instancia celebró la vista en su fondo y luego de aquilatada la prueba presentada por ambas partes litigantes, formuló sus determinaciones de hechos, las cuales se acogen para la disposición de los recursos de apelación presentados.
El demandado aquí coapelante Waldemar Torres, era comerciante y dueño del negocio conocido como Mueblerías Waldemar, con oficinas y local comercial en Villalba, Puerto Rico. El demandado apelado Víctor Martínez, se desempeñaba como herrero para la fecha de los hechos y operaba un negocio conocido con el nombre de Martínez Iron Work.
Para principios de 1995, Waldemar Torres contrató los servicios de Víctor Martínez, para que diseñara y construyera un elevador en el edificio donde operaba la Mueblería Waldemar. El elevador sería utilizado por el personal de dicha mueblería para cargar mercancía y transportarla al área de almacén de dicho negocio, que estaría ubicada en el segundo y tercer piso del edificio. Al momento de la contratación, se le requirió a Víctor Martínez que el ascensor a construir cumpliera con todos los requisitos de ley.
A pesar que Víctor Martínez no contaba con la preparación ni conocimientos para realizar la encomienda, aceptó el construir y diseñar el ascensor por el precio de por $8,000. Al momento de ser construido el ascensor, *735 las facilidades de Mueblerías Waldemar constaban de dos plantas y el mismo fue utilizado para la construcción de la tercera planta.
Es un hecho no controvertido que el ascensor medía 36 pies de altura, construido en acero con un mecanismo de izar (cabria y/o pateca) con capacidad de 2,000 libras y levantaba una plataforma cuadrada, con dimensiones de seis pies, cuyo peso era de 1,108 libras. El ascensor era manejado mediante un botón sujetado a un cable eléctrico que bajaba del mecanismo eléctrico (cabria y/o pateca) por el centro de la estructura de metal con un largo de 30 a 32 pies, para ser operado desde el interior de su plataforma y se iba a utilizar para que transportara mercancía y personas.
Conforme a la prueba pericial presentada, el diseño y construcción del ascensor no cumplía con los reglamentos y estándares aplicables y reconocidos en la industria de la construcción de elevadores, resultando que operaba con un exceso de 708 libras, aún sin carga. De la inspección realizada por el ingeniero Freddy Irizarry Santos, perito del demandante aquí coapelante Carlos Hernández, surge que el mecanismo de izar (cabria o pateca), tenía abundantes partículas de metal en el aceite, lo cual demostraba el mantenimiento deficiente que se le había dado al equipo.
Asimismo, se demostró que en la parte eléctrica del ascensor se había trabajado, pero no así en su área mecánica, pues nunca había sido abierta. También, el perito declaró que el ascensor no tenía aditivo alguno para determinar cuándo operaba sobrecargado, ni frenos de emergencia, según lo requiere el reglamento de construcción de estos equipos. Durante la vista, Víctor Martínez reconoció que desconocía las especificaciones que se requerían en la industria del diseño y construcción de ascensores. Además, que desconocía sobre el mantenimiento que requería el equipo, consistente en el engrase de cadena y verificación del nivel de aceite del mecanismo de izar (cabria y/o pateca).
Respecto al accidente, de la prueba presentada surge que para noviembre de 1998, el apelante Carlos Hernández fue contratado para trabajar durante el período navideño en la Mueblería Waldemar. Que éste, fue asignado a una carpa que dicha empresa mantenía en el pueblo de Coamo, para vender árboles de Navidad. El 22 de enero de 1999, a las 4:30 de la tarde, Carlos Hernández, en compañía de Luis Zayas, empleado de Mueblerías Waldemar por más de 10 años, se disponían a almacenar una mercancía en el tercer piso del edificio de dicha empresa. Como era costumbre, tomaron la mercancía y la ubicaron en la plataforma del elevador, luego entraron al mismo y se ubicaron en el centro de la plataforma, para manejar el control del ascensor. Al llegar al tercer piso, el elevador se desplomó cayendo al vacío con la mercancía y los dos empleados en su interior.
El ascensor cayó de forma estrepitosa, destruyendo las vías por donde discurría y doblando el centro de la plataforma por el impacto. Los ocupantes del ascensor quedaron inconscientes por algún tiempo, por motivo del impacto. Al recobrar la conciencia, Carlos Hernández notó dificultad al respirar y no podía mover sus piernas. Luego de algunos minutos, llegaron al lugar del accidente personal paramédico, quienes brindaron al apelante los primeros auxilios y lo condujeron al Centro de Diagnóstico y Tratamiento de Villalba, donde lo atendieron y ordenaron su traslado al Hospital Dr. Pila de Ponce. El apelante sufría dolores incontenibles en sus pies, piernas y espalda, sangraba por la nariz y experimentaba períodos de pérdida de conocimiento.
Una empleada de la Mueblería Waldemar se comunicó vía telefónica a la residencia de los padres de Carlos Hernández para informarles del accidente. Una vez recibida la información del accidente que le había ocurrido a su hijo, el señor Carlos Hernández, padre, se dirigió a toda prisa al CDT de Villalba. Durante dicho trayecto, Carlos Hernández, padre, sufrió inmensas angustias al pensar que su único hijo varón había fallecido. Al llegar al CDT de Villalba, le informaron que su hijo había sido trasladado en ambulancia al Hospital Dr. Pila de Ponce y que estaba “mal e inconsciente”. Por lo cual, se dirigió inmediatamente al hospital y llamó por celular a su hija, para que fuera a buscar a su madre, Elba Miranda y la llevara al hospital. Esta última se negó a acudir al hospital, ya que pensaba que encontraría a su hijo muerto, pues su experiencia como enfermera industrial le indicaba que *736 este tipo de accidente es fatal.
Al llegar Carlos Hernández, padre, al hospital, se comunicó con los médicos que atendían a su hijo, quienes le informaron que su condición era seria y que como resultado de las lesiones sufridas podía quedar inútil. El personal médico de Sala de Emergencia del Hospital Dr. Pila trató de obtener los servicios de ambulancia aérea, pero tales gestiones fueron infructuosas. Por otro lado, al llegar Elba Miranda al hospital, encontró a su hijo en pánico, pálido, los ojos blancos, teso, no se movía, abría los ojos y los cerraba y hacía movimientos con la cabeza.
En dicha institución hospitalaria, al apelante le tomaron placas de Rayos X (CT Scan) y le aplicaron varios medicamentos para combatir el dolor, en lo que tramitaban su traslado en ambulancia al Hospital Industrial del Centro Médico de Río Piedras. Durante la travesía del apelante hasta el Centro Médico de Río Piedras, acompañado de su señora madre, éste se quejaba a gritos del incontenible dolor en sus piernas y espalda.
Al llegar al Centro Médico a eso de la media noche, al apelante le brindaron atención médica de emergencia, aplicándole demerol para sedarlo y así combatir el dolor que éste sufría y lo trasladaron al Hospital Industrial, donde estuvo hospitalizado hasta el 29 de enero de 1999. La nota de admisión al Hospital Industrial específicamente expresa el siguiente diagnóstico: “Right calcaneus and cuboid fracture bust; left calcaneus fracture”; y la de referido al ser dado de alta, firmada por el Dr. Julio Hernández el 29 de junio de 1999, expresa: “Right Calcaneus and caboid fractures-related, Communitued fracture of the right calcaneus-undisplaced fracture of the left calcaneus-related”.
El tratamiento médico brindado a Carlos Hernández, consistió en la aplicación de medicamentos cada cuatro horas para combatir el dolor que sufría en sus piernas. Según se desprende del récord médico se le hizo una intervención quirúrgica la cual se describe como: “Surgery: closed reduction right calcaneus and right cuboid; Right and left short leg cast”. El pie derecho del apelante en el área del calcáneo quedó triturado con el impacto y no era operable. En su pie izquierdo, aun cuando tenía fractura del calcáneo, ésta no era de la magnitud de la del pie derecho. Al no ser operable la fractura, lo único que se podía hacer era inmovilizar y esperar a que con el tiempo el área del calcáneo, creara un callo.
La madre del apelante declaró que todo lo que ha pasado su hijo, ella lo ha vivido en carne propia. Que al ser dado de alta su hijo, le recetaron medicamentos para combatir el dolor los cuales tenía que ingerir cada cuatro horas y que tomó por espacio de seis meses. Además, le ordenaron a éste mantenerse en reposo con las piernas elevadas y trasladarse en sillón de ruedas. Actualmente, el apelante aún toma medicamentos para el dolor que sufre en sus piernas, tales como “Panadol Pain Relief’ y “Tylenol Pain Relief’.
El apelante Carlos Hernández se vio obligado por espacio de tres meses y medio a utilizar silla de ruedas para poder trasladarse de un lugar a otro, quedando totalmente dependiente de su madre para que lo ayudara a realizar las necesidades fisiológicas y de aseo. Luego utilizó muletas por recomendación de la fisiatra que lo trataba, por tres meses adicionales. Durante ese período de tiempo, el apelante fue sometido a veinte sesiones de terapia física, consistente en aplicación de frío, calor y movimiento, lo cual le producía dolor. La lesión sufrida en el área del calcáneo le ocasionó al apelante que desarrollara artritis post traumática en sus piernas, la cual se manifiesta con constante dolor.
Luego de algún tiempo y en vista que la condición del apelante no mejoraba, fue atendido en tres ocasiones por el Dr. Carlos Fraga, ortopeda especialista en pies, quien luego de evaluarlo le expresó que su pie podía ser operable, pero ello le produciría la pérdida de movimiento de su pie. No obstante, no le recomendaba al apelante dicha operación por su corta edad y sugería que esperara hasta que el dolor que aún padece, fuera de tal magnitud que no lo pudiera soportar. Ahora bien, a pesar que se le recomendó al apelante Carlos Hernández otros bloqueos para disminuir su dolor, éste se negó a recibirlos por sus efectos secundarios.
*737 De la prueba presentada ante el foro de instancia surge que Carlos Hernández desarrolló durante el período de su convalecencia una depresión que requirió tratamiento psiquiátrico con los doctores Báez y Alfonso Hernández. Entre los síntomas que manifestaba el apelante en su evaluación siquiátrica, se encontraban: tristeza, mal humor, aumento de peso (25 libras), dormir durante el día, sentirse inútil, cansado, sin energía, ansiedad, miedo a fracasar, coraje consigo mismo por su condición y una actitud de no salir y compartir con otras personas. Valga señalar que el apelante no tenía historial de depresión previo, según las notas de su récord médico levantado por el Dr. Hernández Ortiz, y que para su condición, le fueron recetadas Prozac 20mg, Transem y Ambiem.
Con motivo del accidente, Carlos Hernández perdió el curso académico de la universidad a la cual asistía de enero a mayo de 1999, atrasándose en su programa de estudios. Según estipularon las partes, el apelante Carlos Hernández aun cuando era un joven de 21 años de edad al momento del accidente, como consecuencia de éste, sufre de un 20% de incapacidad física.
Conforme a la prueba antes aludida, el foro de instancia dictó sentencia declarando con lugar la demanda y condenó a Víctor Martínez y a Guillermo Colón, al pago solidario como cocausantes de los daños, en las siguientes partidas: $75,000 a Carlos Hernández Miranda, $15,000 a Elba Miranda Matos y $5,000 a Carlos Hernández Pérez. Asimismo, declaró con lugar la demanda de coparte presentada por Víctor Martínez a los fines de nivelación interna, estimando que Waldemar Torres Cintrón incurrió en un 30% y Víctor Martínez Martínez en un 70% de responsabilidad de los daños, según fueron adjudicados. Por otro lado, declaró sin lugar las reclamaciones presentadas en la demanda de coparte contra Guillermo Colón Rivero y la demanda de coparte instada por Waldemar Torres Cintrón contra Víctor Martínez Martínez. (Ap. XV, KLAN-2009-00764, págs. 89-90.)
n
Procedemos a resolver en los méritos los recursos presentados por los apelantes, limitando nuestro análisis exclusivamente a los errores alegados y discutidos sobre la sentencia emitida por el foro de instancia, como parte de nuestras funciones revisoras como foro intermedio apelativo. Moran v. Martí, 165 D.P.R. 356, 366 (2005); Srio. del Trabajo v. Gómez Hnos., Inc., 113 D.P.R. 204, 207 (1982).
Recurso de apelación KLAN-09-00764
A
Como primer error, alega el apelante Carlos Hernández, et ais., en su recurso KLAN-09-00764, que el tribunal de instancia incidió al no realizar una determinación de temeridad del apelado Víctor Martínez Martínez.
Le asiste la razón, el error fue cometido. Veamos porqué.
Honorarios de abogado por temeridad
En caso que cualquier parte o su abogado haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. Regla 44.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Incurre en temeridad aquella parte que hace necesario un pleito frívolo y obliga a la otra parte a incurrir en gastos innecesarios. P.R. Oil v. Dayco, 164 D.P.R. 486, 510-511 (2005).
La conducta de temeridad ha sido definida, como aquella en la que incurre una parte cuando se defiende injustificadamente de la acción en su contra; no admite responsabilidad, lo cual limitaría la controversia a ser dilucidada por el tribunal; cuando niega la certeza de un hecho, a pesar de constarle su veracidad. O.E.G. v. Román, 159 D.P.R. 401, 418 (2003); Polanco v. Tribunal Superior, 118 D.P.R. 350, 359 (1987).
*738 Aplicación de la norma jurí dica
Conforme surge de los autos, el apelante Carlos Hernández, et ais., presentó demanda en daños contra Víctor Martínez y otros, en enero del año 2000. (Ap. I, págs. 1-7.) De la contestación a demanda instada por Víctor Martínez, surge que éste negó la responsabilidad imputada. ■ (Ap. II, págs. 8 y 10.) Asimismo, del examen del expediente se desprende que durante todo el presente litigio, el apelado Víctor Martínez se ha mantenido firme negando responsabilidad por la construcción defectuosa del referido elevador, limitándose a aceptar su construcción. (Véase, Ap. X, págs. 33-34; Ap. XIII, pág. 49.)
Concluimos de las determinaciones de hechos emitidas por el foro de instancia y acogidas por este tribunal apelativo, que el apelado Víctor Martínez “aunque no contaba con la preparación ni conocimientos para realizar la encomienda contratada, aceptó realizar la misma a un costo de $8,000.00”. (Ap. XV, pág. 74) El apelado Víctor Martínez “incumplió con la obligación impuesta por la reglamentación que rige el diseño, construcción e instalación de ascensores”. (Id., pág. 76.) Asimismo, durante el contrainterrogatorio, Víctor Martínez “tuvo que admitir desconocer estos procedimientos, así como de las especificaciones que requiere y reconoce la industria del diseño y construcción de elevadores”. (Id., pág. 77.)
Es un hecho cierto que el presente caso se encuentra pendiente ante nuestros tribunales desde hace casi una década, en gran medida, debido a la actitud contumaz de Víctor Martínez de litigar el caso. Precisamente su negativa a admitir responsabilidad sobre la defectuosa construcción del elevador, obligó al apelante Carlos Hernández a incurrir en gastos innecesarios. Ante ello, concluimos que el apelado Víctor Martínez incurrió en temeridad en el presente pleito, por lo que procede la imposición de $15,000 por concepto de honorarios de abogado a favor de Carlos Hernández, et ais.
B
Como segundo error, sostiene el apelante Carlos Hernández, et ais., en su recurso KLAN-09-00764, que el tribunal de instancia incidió al valorar los daños que éste sufriera, concediendo una cuantía muy baja.
También le asiste la razón, el error fue cometido. Veamos porqué.
La adjudicación de la cuantí a de daños
La responsabilidad civil en daños y perjuicios, comprende el deber de resarcir al perjudicado, otorgándole un valor económico al daño sufrido que se traduce en compensación. Se trata de una subrogación donde la compensación pecuniaria crea una situación patrimonial equivalente a la destruida a consecuencia del daño generado. Cintrón Adorno v. Gómez, 147 D.P.R. 576, 588 (1999); Pagán v. Shiley Caribbean, Etc., 122 D.P.R. 193, 206 (1988). Al momento de valorar los daños de un perjudicado están incluidos elementos subjetivos como la discreción, el sentido de justicia y conciencia humana del juzgador de los hechos, por lo que se ha reconocido que la estimación y valorización de daños es un proceso adjudicativo difícil y angustioso. Albino v. Martínez, opinión de 4 de junio de 2007,2007 J.T.S. 117, pág. 1623.
Es norma reconocida que en apelación no se intervendrá con la adjudicación de daños por el tribunal de instancia, a menos que la cuantía concedida sea ridiculamente baja o exageradamente alta. Lo anterior es cónsono con el principio que es el foro de instancia quien está en mejor posición de tomar la decisión, por lo que el tribunal apelativo debe otorgarle deferencia a la adjudicación de daños realizada por el tribunal sentenciador. Nieves Cruz v. U.P.R., 151 D.P.R. 150, 170 (2000); Rivera Rodríguez v. Tiendas Pitusa, 148 D.P.R. 695, 700 (1999).
*739 Aplicación de la norma jurí dica
Según sostiene el apelante Carlos Hernández, et ais., la cuantía concedida en daños debe aumentarse, “conforme surgen de las propias determinaciones de hechos de la sentencia cuya revisión se solicita”. (Recurso de apelación KLAN-09-00764, pág. 6.) A fin de adjudicar tal controversia, nos referiremos a las determinaciones de hechos emitidas por el tribunal de instancia en su sentencia de 31 de marzo de 2009.
Respecto a los daños sufridos por Carlos Hernández hijo, como consecuencia del accidente ocurrido en el ascensor de la Mueblería Waldemar, es un hecho cierto que éste quedó inconsciente por algún tiempo por motivo del impacto. Durante su traslado al Hospital Dr. Pila de Ponce, el apelante sufrió dolores incontenibles en sus pies, piernas y espalda, sangró por la nariz y experimentó períodos de pérdida de conocimiento. En el hospital, le aplicaron al apelante medicamentos para combatir el dolor, y aun cuando gritaba de dolor en sus extremidades, no podían aplicarle más medicamentos para aliviarlo. Durante su traslado al Centro Médico de Río Piedras, el apelante se quejó a gritos del incontenible dolor en sus piernas y espalda. Una vez lo trasladaron al Hospital Industrial, el Dr. Julio Hernández Claudio diagnosticó fractura bilateral del calcáneo.
La razón por la cual le fijaron un yeso al apelante, particularmente en el pie derecho, consistió en que el área del calcáneo quedó triturada con el impacto y no era operable. Al ser dado de alta, le prescribieron medicamentos para combatir el dolor, los cuales debió ingerir cada cuatro horas, por espacio de seis meses. Además, le ordenaron mantenerse en reposo con piernas elevadas y trasladarse en sillón de ruedas. Actualmente, aún toma medicamentos para el dolor que sufre, tales como Panadol y Tylenol.
La lesión sufrida por el apelante en el área del calcáneo, le ocasionó que desarrollara artritis post traumática en sus piernas, la cual se manifiesta con constante dolor. Además, el apelante se vio obligado por espacio de tres meses y medio a utilizar silla de ruedas para poder trasladarse de un lugar a otro, quedando totalmente dependiente de su madre para que lo ayudara a realizar las más básicas necesidades fisiológicas y de aseo. Luego utilizó muletas, por recomendación de la fisiatra que lo trataba, por tres meses adicionales. Durante dicho período, el apelante fue sometido a veinte sesiones de terapia física, consistente en aplicación de frío, calor y movimiento, lo cual le produjo mucho dolor.
Como consecuencia de tales hechos, el apelante desarrolló una depresión que requirió tratamiento psiquiátrico, asistiendo a seis citas. Asimismo, con motivo del referido accidente, el apelante perdió el curso académico universitario de enero a mayo de 1999 y sufrió un 20% de incapacidad física. Además, su condición ha provocado que aumente de peso desmedidamente por la vida sedentaria que se ha visto obligado a llevar a su temprana edad. De la sentencia surge que:
Este tribunal tuvo la oportunidad de observar las áreas de las piernas afectadas por el accidente, las cuales lucían atrofiadas y deformes; la pierna derecha más corta que la izquierda; inflamadas más la derecha que la izquierda y de acuerdo a las manifestaciones incontrovertidas de este codemandante no podía apoyar su pie descalzo en la superficie del piso por el incontenible dolor que esto le produce, descansando su peso en el pie izquierdo. El demandante, además, cojea al caminar, lo cual antes del accidente no sucedía.
Carlos Hernández Miranda recuerda la traumática experiencia sufrida, todos los días al levantarse y verse impedido de apoyar su peso en el pie derecho, lo que le produce dolor. Ha desarrollado una artritis post traumática, que le obliga ingerir medicamentos.
El día de la vista, Carlos Hernández Miranda manifestó tener dolor en los pies, a pesar de que la única actividad física realizada fue caminar del estacionamiento del Tribunal a la Sala, donde se ventilaba su caso. Este demandante declaró que esto le pasa todos los días, ya que con el transcurrir de las horas su pie se hincha produciéndole dolor.
*740 (Ap. XV, págs. 83-84.)
Por otra parte, los padres de Carlos Hernández Miranda sufrieron daños emocionales desde el momento en qué se le dio la lamentable noticia del accidente ocurrido a su hijo, pues pensaron que lo encontrarían muerto. Según determinó el tribunal de instancia, desde que le notificaron a Elba Miranda del accidente que sufrió su hijo, hasta dos horas más tarde que su hermana le comunicó que estaba vivo, ésta “estuvo histérica, confundida y muy afectada”. Asimismo, Carlos Hernández padre, sufrió inmensas angustias mentales al pensar que su único hijo varón había fallecido e inclusive, durante su testimonio, éste estalló en llanto y sostuvo “que lo que vivió no se lo desea a nadie”. (Id.., págs. 79-80.)
Durante la hospitalización del apelante, sus padres lo visitaron todos los días, mas no le permitieron permanecer con su hijo todo el día y noche, por las normas del Hospital Industrial. La madre del apelante declaró que todo lo que le ha pasado a su hijo, “ella lo ha vivido en carne propia”. Que cuando dieron de alta a su hijo y se vio obligado a utilizar silla de ruedas por un tiempo, fue ella quien estuvo ayudándole a realizar las necesidades fisiológicas y de aseo más básicas. (Id., págs. 81-82.)
A base de tales determinaciones de hechos, concluimos que la cuantía de $75,000 concedida al apelante Carlos Hernández hijo en concepto de daños, es muy baja y amerita la concesión de una suma mayor de $125,000, según solicitado. Las restantes sumas monetarias concedidas a los padres de Carlos Hernández Miranda, en concepto de daños, se aumentan a razón de $10,000 para Carlos Hernández Pérez y $20,000 para Elba I. Miranda Matos, como justa compensación en daños y perjuicios.
ni
Recurso de apelación KLAN-09-00784
A
Por su parte, el apelante Waldemar Torres et ais., sostiene, en síntesis, en su recurso KLAN-09-00784, que el foro de instancia incidió al declarar con lugar la demanda de coparte instada en su contra por Víctor Martínez Martínez, estimando que le era responsable solidariamente en un 30% de los daños probados.
No le asiste la razón; el error no fue cometido. Veamos.
Cocausantes de un daño y responsabilidad solidaria
El Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, nada dice expresamente acerca de la solidaridad de cocausantes de un daño. Sin embargo, la responsabilidad debe considerarse solidaria cuando sean dos o más los culpables de un daño, pues se trataría de un caso de “solidaridad legal". En éstos, sólo se requiere alegar bien y suficientemente en la demanda el hecho de que el nuevo demandado o tercero demandado, según los casos, responde solidariamente por los daños reclamados con el demandado original, contra quien se radicó demanda dentro del término prescriptivo dispuesto por el ordenamiento. Arroyo v. Hospital La Concepción, 130 D.P.R. 596, 607-608 (1992).
Además, los cocausantes de un daño son responsables solidariamente frente al que así lo reclama, pues se presume su responsabilidad compartida. Id:, Torres Ortiz v. E.L.A., 136 D.P.R. 556, 564 (1994).
Responsabilidad por ruina de edificios
Como es sabido, el Artículo 1483 del Código Civil, establece la responsabilidad por vicios de construcción al disponer que el contratista de un edificio que se arruinase por vicios de la construcción responde de los daños y perjuicios, si la ruina tuviere lugar dentro de los diez años, contados desde que concluyó la construcción. 31 L.P. *741 R.A. see. 4124.
En cuanto a si el término “edificio” abarca los aparatos mecánicos como ascensores, en Federal Ins. Co. v. Dresser bid., Inc., 111 D.P.R. 96, 102-105 (1981), se resolvió que la responsabilidad decenal bajo el Artículo 1843, supra, se extiende a ascensores e instalaciones análogas.
Por otro lado, el Artículo 1807 del Código Civil responsabiliza al propietario del edificio en ruina, disponiendo que “[e]l propietario de un edificio es responsable de los daños que resulten de la ruina de todo o parte de él, si ésta sobreviniere por falta de las reparaciones necesarias”. 31 L.P.R.A. see. 5146.
Aplicación de la norma jurídica
Conforme la prueba desfilada ante el foro de instancia, surge que el coapelante Waldemar Torres contribuyó al accidente en cuestión, en su carácter de propietario del edificio donde ubicaba la Mueblería Waldemar y el referido elevador. Veamos.
Es un hecho cierto que Waldemar Torres contrató los servicios de Víctor Martínez, para que éste diseñara y construyera un elevador en su edificio, donde operaba la Mueblería Waldemar. Al momento de la construcción del referido ascensor, se tuvo la intención de que transportara tanto mercancía como personas. Como cuestión de hecho, “no existía ningún aviso que prohibiera su uso por el personal de la mueblería”. Así lo confirmó el Sr. Roberto Malavé Crespo, Investigador de la Oficina de Seguridad y Salud en el Empleo del Departamento del Trabajo y Recursos Humanos, “quien investigó los hechos que motivan el presente caso contemporáneo a su ocurrencia”. (Véase, Sentencia de TPI, Ap. XV, pág. 75.)
Valga señalar que una vez se contrató a Carlos Hernández para trabajar en la Mueblería Waldemar, “no fue orientado en la forma que debía realizar su trabajo, por lo que su método de aprendizaje fue observando a los empleados regulares cómo éstos realizaban sus funciones”. (Id., pág. 78.) Por otro lado, en la inspección realizada el 19 de junio de 2002 por el ingeniero Freddy Irizarry, sobre el mecanismo de izar (cabria o pateca), al abrirlo se encontró en el aceite, abundantes partículas de metal. Esto es demostrativo del deficiente mantenimiento que se le brindó al equipo. (Id., págs. 75-76.)
A su vez, la Oficina de Seguridad y Salud en el Empleo del Departamento del Trabajo y Recursos Humanos, realizó una investigación que culminó en multas a Waldemar Torres ascendentes a $2,250, suma que se satisfizo. Los señalamientos de la multa consistieron en no estar inspeccionado el elevador, utilizar el elevador para izar personas y bajar personas, que no cumplía con la Regla Especial Número 5, Reglamento Núm. 2192 del Departamento del Trabajo y Recursos Humanos, que regula la inscripción e inspección de ascensores y/o equipos relacionados y usarlo, por la exposición de sus usuarios a grave daño.
Tras aquilatar la prueba presentada ante sí, el tribunal de instancia dispuso en su sentencia, en lo pertinente, que:
“[...] los crasos vicios o defectos en el diseño y construcción del ascensor fue la causa única de que éste cayera al vacío y su ruina, lo cual pudo ocurrir en cualquier momento, aún sin carga.
A esto contribuyó el negligente mantenimiento brindado, ya que de haberse examinado esporádicamente los niveles de aceite del mecanismo de izar (cabria y/o pateca) se hubiera percatado del desgaste que sufría el equipo, lo que hubiera sugerido detener su uso.
[...]
*742 La prueba que este Tribunal mereció credibilidad, estableció que el mantenimiento del referido elevador fue deficiente o ninguno. La falta de mantenimiento contribuyó al desplome del elevador. (Énfasis suplido.)
Ap. XV, págs. 77 y 84.
Concluimos que no incidió el tribunal de instancia al responsabilizar de manera solidaria al coapelante Waldemar Torres, debido a que su negligencia como propietario del local de la mueblería y del elevador en cuestión -y por la falta de mantenimiento que se le dio a éste-, contribuyó al lamentable accidente que ocasionó daños a Carlos Hernández, et ais.
B
Como segundo error, sostiene el coapelante Waldemar Torres et ais., en su recurso KLAN-09-00784, que el foro de instancia incidió al denegar su demanda de coparte sobre incumplimiento de contrato y daños, instada contra Víctor Martínez.
No le asiste la razón; el error no fue cometido. Veamos porqué.
Principios generales de los contratos
El Código Civil dispone que los contratos son negocios jurídicos que tienen fuerza de ley entre las partes, una vez concurren los requisitos de consentimiento, objeto y causa. Arts. 1213 y 1044, Código Civil, 31 L.P.R.A. sees. 3301 y 2994; Bosques v. Echevarría, 162 D.P.R. 830, 836 (2004); Master Concrete Corp. v. Fraya S.E., 152 D.P.R. 616, 624-625 (2000). Las partes contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público. Art. 1207 de Código Civil, 31 L.P.R.A. see. 3372; Jarra Corp. v. Axxis Corp., 155 D.P.R. 764, 772 (2001).
Ante ello, los contratantes no solamente se obligan al cumplimiento de lo pactado voluntariamente, sino también a toda consecuencia que sea conforme a la buena fe, al uso y a la ley. Arts. 1207 y 1210, Código Civil, 31 L.P.R.A. sees. 3372 y 3375; López v. González, 163 D.P.R. 275, 282 (2004); Jarra Corp. v. Axxis Corp., supra.
Por último y según antes discutido, el Artículo 1483 del Código Civil, supra, prescribe que el contratista de un edificio que se arruinase por vicios de la construcción responde de los daños y perjuicios que cause si ocurren dentro del plazo de diez (10) años, contados desde que concluyó la obra. Zayas v. Levitt & Sons of P.R., Inc., 132 D.P.R. 101, 108-109 (1992); Rivera v. Las Vegas Dev. Co., Inc., 107 D.P.R. 384, 385 (1978).
Aplicación de la norma jurí dica
De los autos surge que el apelado Víctor Martínez, presentó demanda de coparte contra Waldemar Torres y Guillermo Colón, alegando eran los responsables de los daños sufridos por los demandantes originales Carlos Hernández, et ais. En enero de 2005, Waldemar Torres presentó demanda de coparte contra Víctor Martínez, alegando, en síntesis, que éste era responsable por los daños causados como resultado de la construcción defectuosa del ascensor. (Ap. IX, págs. 29-32.)
Conforme a las determinaciones de hechos emitidas por el tribunal de instancia en su sentencia, el apelado Víctor Martínez se desempeñaba como herrero y operaba el negocio conocido con el nombre de Martínez Iron Work. A finales de 1994 o principios de 1995, Waldemar Torres contrató sus servicios para que diseñara y construyera un ascensor en el edifico donde opera Mueblería Waldemar. Al momento de la contratación, se le requirió a Víctor Martínez que cumpliera con todos los requisitos de ley.
*743 Es un hecho cierto que el apelado Víctor Martínez, “aunque no contaba con la preparación ni conocimientos para realizar la encomienda contratada, aceptó realizar la misma a un costo de $8,000”. (Ap. XV, pág. 74.) También, surge de la prueba que tuvo el foro de instancia ante sí, que a fin de cumplir con la encomienda contratada, Víctor Martínez diseñó el elevador y lo construyó, instalándolo e incorporándolo al edificio donde opera la Mueblería Waldemar, seleccionando y adquiriendo éste todo el equipo y materiales a ser utilizados. Además, que Waldemar Torres no fue lo suficientemente prudente y diligente para investigar y constatar que Víctor Martínez tuviera la pericia para diseñar y construir el ascensor, cuando la profesión y negocio de este último era de herrero.
Por lo tanto, según lo resuelto por el foro de instancia, no procede la reclamación en daños instada por Waldemar Torres contra Víctor Martínez, pues él sabía que este último no tenía pericia y conocimiento en la construcción de ascensores, no obstante, aun así lo contrató para que realizara la obra de construir el ascensor.
Recursos de Apelación KLAN-2009-01101
Alega el coapelante Guillermo Colón Rivero, en síntesis, que incidió el foro de instancia al imponerle responsabilidad solidaria con el constructor del ascensor, cuando no existe un nexo causal entre sus reparaciones y el accidente ocurrido.
Le asiste la razón; el error fue cometido.
Cocausantes de un daño y responsabilidad solidaria
Según expusimos en el Capítulo III de esta sentencia, los cocausantes de un daño por omisiones o negligencia son responsables solidariamente frente al perjudicado. Por lo tanto, cada uno de ellos responde solidariamente de su reparación por razón de su propia culpa. Esta doctrina va dirigida a “proteger con más eficiencia el perjudicado, quien puede requerir de cualquiera de ellos la reparación íntegra del daño”. Torres Ortiz v. E.L.A., supra. Véase, J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1985, T. 1, pág. 151.
La prueba presentada ante el foro de instancia demostró que el coapelante Guillermo Colón Rivero, no fue contratado por Waldemar Torres Cintrón para darle mantenimiento al ascensor. Además, no se probó en el juicio que la participación de Guillermo Colón Rivero “en la soldadura en la estructura del elevador” fuera causa del accidente. {Véase, Sentencia del T.P.I., pág. 15; Ap. XV, KLAN-2009-01101, pág. 84.) Por lo tanto, no procede en derecho imponerle responsabilidad solidaria alguna al coapelante Guillermo Colón Rivero y así se revoca la sentencia en cuanto a tales extremos.
Respecto a los demás errores alegados por Guillermo Colón Rivero, no son necesarios discutirlos por habérsele exonerado de responsabilidad civil.
IV
Por los anteriores fundamentos de derecho, se modifica la sentencia emitida por el Tribunal de Primera Instancia, Sala de Ponce, a los fines de imponerle a Víctor Martínez Martínez el pago de $15,000 a favor de Carlos Hernández, et ais., por concepto de honorarios de abogado por temeridad. Asimismo, se aumenta la cuantía concedida a Carlos Hernández Miranda por concepto de daños, a la suma de $125,000, la cuantía concedida a Carlos Hernández Pérez se aumenta a la suma de $10,000 y la cuantía de Elba I. Miranda Matos se aumenta a razón de $20,000. Se revoca la sentencia impuesta al apelante Guillermo Colón Rivero que le impuso responsabilidad como cocausante de los daños, y se confirma la sentencia sobre los demás extremos.
Notifíquese inmediatamente por la vía ordinaria.
*744 Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones